FREDERICK W. FINNEY, MARY E. FINNEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; F. W. FINNEY CONSTRUCTION CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Finney v. Commissioner
Docket Nos. 1002-76, 1003-76.
United States Tax Court
T.C. Memo 1980-23; 1980 Tax Ct. Memo LEXIS 557; 39 T.C.M. (CCH) 938; T.C.M. (RIA) 80023; January 28, 1980, Filed John G. Rocovich, Jr. and Cordell M. Parvin, for the petitioners. Michael R. Moore and John C. McDougal, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: In these consolidated cases, respondent has determined the following deficiencies in petitioners' Federal income tax: Additions to
Taxable
[1]tax under Dkt. No.
Petitioner
Year
Deficiency
sec. 6653(a)
1002-76
Frederick W. Finney,
1972
$22,794.00
Mary E. Finney
1973
14,715.00
1003-76
F. W. Finney Con-
1972
16,161.26
$808.06
struction Corporation
1973
2,366.03
118.30
*561 Concessions having been made, the issues presented for our decision are as follows: (1) Whether expenses and depreciation claimed in connection with certain activities conducted on a houseboat owned by F. W. Finney Construction Corporation are deductible as ordinary and necessary business expenses and depreciation expense, under the respective provisions of sections 162 and 167, or, in the alternative, whether such expenses and depreciation are deductible as entertainment expenses and depreciation expense after the application of section 274; (2) Whether expenses incurred for travel and entertainment at various locations, as well as certain miscellaneous expenses and depreciation claimed by F. W. Finney Construction Corporation, are deductible pursuant to sections 162 and 167, and after the application of section 274; (3) Whether the total expenses and depreciation claimed with respect to automobiles furnished by F. W. Finney Construction Corporation to its president and sole shareholder, Frederick W. Finney, are deductible under the respective provisions of sections 162 and *562 167; (4) Whether any portion of the expenses incurred or depreciation claimed by F. W. Finney Construction Corporation, and disallowed by respondent, constitutes a constructive dividend to Frederick W. Finney; and (5) Whether F. W. Finney Construction Corporation is subject to the negligence penalty provided under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The principal office of F. W. Finney Construction Corporation (petitioner in docket No. 1003-76) was at Vinton, Virginia, at the time its petition herein was filed. Petitioner filed its Federal income tax returns for the calendar years in issue with the Internal Revenue Service Center, Memphis, Tennessee. Frederick W. Finney and Mary E. Finney (petitioners in docket No. 1002-76) are husband and wife and resided in Vinton, Virginia, at the time their petition was filed herein. Petitioners filed their joint Federal income tax returns for the years in issue with the Internal Revenue Service Center, Memphis, Tennessee. Mary E. Finney is a party herein only because of the joint returns and, consequently, Frederick W. Finney will hereinafter be referred to as petitioner. *563 Petitioner has been actively involved in real estate development since 1961. He formed several partnerships with larger developers and eventually organized F. W. Finney Construction Corporation (Finney Construction or Company, where the identity is clear) in 1970. During the taxable years at issue, petitioner was the president and sole stockholder of Finney Construction. The secretary-Treasurer and vice president of Finney Construction were, at all times relevant to this case, petitioner's spouse and brother-in-law, respectively. In addition to an office in petitioner's personal residence during the years in issue, Finney Construction had an office located in Vinton, Virginia.On June 23, 1972, a building permit was issued to Finney Construction for an addition to its office space, said addition being completed sometime prior to June 30, 1973. During this period of renovation, the office furniture and equipment, company files, and telephone service, were all continuously maintained at Vinton. The corporate payroll still issued from the Vinton office and the sole secretarial employee continued to serve at that office. While the Vinton office was under partial construction *564 because of the office addition, numerous business associates met petitioner at that office to discuss business notwithstanding the condition of the premises. Throughout 1972 and 1973, Finney Construction also owned a trailer which was 20-feet long and 9-feet wide. This trailer was located in the Montgomery Village real estate development and was ocasionally moved to different sections within that development. It contained, inter alia, a telephone, drafting tables, desk, file cabinets, and maps of the subdivision. The trailer was used as a field office for the benefit of petitioner and his subcontractors. Throughout the taxable years at issue, Finney Construction was primarily engaged in the business of residential real estate development. It developed two subdivisions known as Frederick Acres and Montgomery Village. One of the most desirable features of these two subdivisions was their location. Frederick Acres is located approximately 11 miles from Roanoke, Virginia, and 7 miles from Smith Mountain Lake (one of the largest lakes within 300 miles of Roanoke). Montgomery Village is situated approximately 6 miles from Roanoke, Virginia, and 5-1/2 miles from Smith Mountain *565 Lake. In addition to these real estate developments, Finney Construction also built the Aqua Net Swimming and Racket Club in Montgomery Village.[2] It also constructed the Bay Roc Dry Storage at the Bay Roc Marina near Smith Mountain Lake, which was completed in December 1973. Docked at the Bay Roc Marina on Smith Mountain Lake was the Company's 55-foot Kingscraft Houseboat which it had purchased on October 17, 1973, at a cost of $54,619. During 1973 and shortly before the purchase of the Kingscraft Houseboat, Finney Construction sold its Stardust Cruiser Houseboat which the company had acquired on June 28, 1971, at a cost of $27,840.12.
The latter boat, which the company owned for taxable year 1972 and most of taxable year 1973, was also docked at Bay Roc Marina. It was 50-feet long and 12-feet wide with a solid steel hull. Near its bow was a covered patio area. The interior of the boat housed the helm. Situated across from the helm was a sofa, chair, and storage area. Behind the helm was the boat's galley which contained *566 a sink, gas range, and full-size refrigerator. On the starboard side of the galley was a breakfast nok with a table and beyond that were two bunk beds and a lavatory. The boat's stateroom was located near the stern and had an exit door to the outside deck.
The corporate houseboat was kept well stocked with both alcoholic and nonalcoholic beverages and a variety of food-stuffs. It also had a music system which required the use of audio tape recordings. Petitioner, as the Company's sole stockholder and chief executive officer, sometimes used the corporate houseboat as a promotional tool to help persuade prospective buyers of homes in Frederick Acres and Montgomery Village to close the sale. His practice was to travel through the subdivisions to meet relators and potential buyers then, after explaining the construction and value of the given property, petitioner would sometimes escort the interested parties to the Company's houseboat where a variety of refreshments would be served with an eye toward closing the sale. During 1972 and 1973 Finney Construction sold approximately 100 homes. In addition, petitioner would conduct sales meetings with numerous relators in the area *567 and conclude such meetings on the corporate houseboat. While on the boat, petitioner served refreshments to the realtors. Finney Construction mainained no record of the number of meetings or the expenses incurred therewith. During 1973, Finney Construction used the houseboat to promote its subsidiary corporation, the Aqua Net Swimming and Racket Club. The parents and children of the club's swim team were invited on the corporate houseboat in order to promote the club and sell more homes in Montgomery Village by gaining the goodwill of that community. As with the relatos and prospective home buyers, no record was kept of the swim club's meetings or social gatherings on the boat. In addition to those described above, petitioner also met with attorneys, bankers, subcontractors, suppliers, and other business associates on the corporate houseboat primarily to promote the sale of homes by Finney Construction. These meetings occurred near the helm or in the galley, since the boat was without a study and had no office furnishings. Petitioner's spouse, a corporate officer of Finney Construction, would frequent the houseboat for the primary purpose of operating the nearby corporate *568 swim club.Moreover, petitioner's two children would visit the houseboat on weekends. In 1972 and 1973, petitioner, his family, and his brother-in-law's family, would use the corporate houseboat approximately six times during the summer, on weekends. Once or twice each summer the two families would remain on the houseboat overnight. Petitioner also had a few parties on the corporate houseboat but no record was kept by Finney Construction as to who actually attended these functions. At least two families, who were homeowners in the real estate subdivisions of Montgomery Village and Frederick Acres, were entertained on the houseboat on several social occasions throughout 1972 and 1973. During the course of an audit in 1975, conducted by respondent on the 1972 and 1973 taxable years of Finney Construction, petitioner offered the following written explanation of the use of the corporate houseboats: Houseboat (s): Since acquiring the first houseboat in 1968, I have used these houseboats to entertain clients, real estate agents and brokers, salesmen, bankers, suppliers, sub-contractors and vrious other people with whom I am constantly in contact with, to further the business *569 purposes of F. W. Finney Construction Corporation. I take on the average of 2 - 3 prospective buyers from the Montgomery Village and/or Frederick Acres subdivisions on the boat weekly where they are entertained, to show these clients they are just under six miles from the lake, and this has been a tremendous selling point for this Corporation. As evidence of the above, over 40 contracts have been negotiated and signed while on the boats. The preceding explanation notwithstanding, Finney Construction failed to maintain an adequate record of those individuals who had consumed beverages and food on the corporate houseboat. Consequently, the dates, times, amounts and purposes of such consumption are largely unknown. [3]
On its 1972 and 1973 corporate income tax returns, Finney Construction deducted the respective amounts of $6,090.03 and $6,577.14 for depreciation. It also deducted $400 in 1972 and $859 in 1973 for insurance, all as regarded *570 its houseboats. Additional expenses, consisting of such items as gasoline, boat repairs, audio tapes, food, and liquor, were deducted by Finney Construction on its 1972 return as travel and entertainment expenses. In 1973, Finney Construction deducted $4,356.40 on its corporate income tax return for boat expenses, including TV repairs, gasoline, utilities, and various othes. In addition to the aforementioned houseboat expenses, Finney Construction deducted on its 1972 and 1973 corporate income tax returns many items as travel and entertainment expenses. As with the houseboat expenses, no log or record was maintained by Finney Construction of the following claimed travel and entertainment expenses incurred and deducted in taxable years 1972 and 1973: 1972
Check No.
Date
Payee
Purpose
Amount
3046
12/26/72
American Express
Sheraton Motor Inn
$ 76.72
2991
12/11/72
Hidden Valley
Minimum and
Country Club
Bar Bill
45.00
2844
10/30/72
American Express
Holiday Inn,
Roanoke
53.38
2487
7/18/72
Hidden Valley C.C.
Four Buffets
51.74
2527
7/24/72
American Express
Holiday Inn,
Roanoke (2)
64.78
2527
7/24/72
American Express
Peachtree Motel
Myrtle Beach
68.22
2407
6/12/72
Hidden Valley C.C.
Balance--
Minimum Charge
32.26
2390
6/12/72
American Express
Holiday Inn,
Roanoke (2)
16.65
2390
6/12/72
American Express
Fiji Island
Restaurant
29.95
2390
6/12/72
American Express
China Lantern,
Myrtle Beach, S.C.
20.63
2390
6/12/72
American Express
Hertz
53.80
2346
5/24/72
Frederick Finney
Peaks of Otter Lodge
24.70
2236
4/21/72
Bank Americard
Myrtle Beach
(Owens Liquor)
37.95
2209
4/20/72
American Express
Jade Tree Inn,
Myrtle Beach
10.50
2175
4/10/72
Hidden Alley C.C.
Three Buffets
31.79
2054
3/3/72
Hidden Valley C.C.
Four Buffets
24.86
1969
2/10/72
Frederick Finney
Restaurant
35.26
1895
1/18/72
R.V. Homebuilders
Golf Trip
75.00
TOTAL
$ 753.19
*571 1973
Check No.
Date
Payee
Purpose
Amount
4347
12/31/73
Hidden Valley C.C.
Food
$103.07
4249
11/13/73
Aberdeen Barn,
Not Stated
Waynesboro
62.92
4182
10/12/73
Hidden Valley C.C.
Bar Bill
68.92
4096
10/15/73
American Express
Holiday Inn
(Champagne, One
Dozen Roses)
38.00
4096
10/15/73
American Express
Yachtsman Inn,
Myrtle Beach
17.02
4096
10/15/73
American
Express
Hotel
Roanoke
52.48
4096
1//15/73
American Express
Dutch Inn,
Collinsville, Va.
51.75
3901
8/20/73
Hidden Valley C.C.
Six Buffets
46.28
3729
7/9/73
Yatchsman Motel
Not Stated
207.00
3851
7/17/73
American Express
Quality Courts,
Norfolk
44.79
3759
7/11/73
American Express
Various Hotels
and Restaurants
101.25
3659
5/31/73
Hidden Valley C.C.
Six Buffets,
One Child
48.74
3541
5/17/73
American Express
Motel and
Restaurant
157.96
3473
5/1/73
F. W. Finney
Steak House #2
10.88
3374
4/2/73
American Express
Various Motels
202.73
3202
2/13/73
Lake Wright Motel
Not Stated
37.45
3343
2/21/73
Hidden Valley C.C.
Rental ($22.88)
68.73
3331
3/31/73
Roanoke Valley
Golf Trip
Golf Trip
50.00
TOTAL
$1,369.97
*572 Finney Construction also deducted amounts of $493 in 1972 and $542 in 1973 for country club dues paid for petitioner to the Hidden Valley Country Club. [4] Furthermore, Finney Construction expended and deducted on its corporate tax return $248.50, and $50 in 1972 for VPI football tickets and Roanoke-Salem Rebels hockey tickets, respectively, and $306.50 in 1973, once again for VPI football tickets.Said tickets were used by petitioner s brother-in-law and his spouse who accompanied petitioner and his wife to such sporting events. On its 1972 corporate income tax return, the Company deducted $129.94 for a vacuum cleaner [5] and $692.18 for numerous miscellaneous expenses. With respect to Finney Construction's 1973 corporate income tax return, it deducted $12.48 for *573 flowers, $10 for sunglasses, $151.30 for shrubbery, [6] and $1,996.28 for a variety of miscellaneous expenses. No records were kept of the miscellaneous expenses in the taxable years at issue. During 1972 and 1973, Finney Construction owned a 1972 Cadillac automobile. In late 1973 the Company disposed of the 1972 automobile and purchased a 1974 Cadillac automobile. These automobiles were driven by petitioner in connection with his business, but he also drove them to his home in the evenings and "every place that he went" (except for occasional trips).
In 1972, Finney Construction paid and deducted on its corporate income tax return $260 for automobile insurance and in 1973 it paid and deducted $252 for such insurance. Respondent disallowed 50 percent of *574 the amounts paid for automobile insurance as well as 50 percent of the gasoline, repairs, and other automobile expenses deducted in 1972 and 1973. On the 1972 and 1973 corporate income tax returns filed by Finney Construction, it also depreciated the corporate automobiles in question. With respect to the 1972 automobile, respondent disallowed 50 percent of the depreciation claimed in 1972 and 1973. Insofar as the 1974 automobile is concerned, respondent adjusted the salvage value from $1,549.26 to $5,000, and then disallowed 50 percent of the depreciation claimed in 1973.
Finney Construction maintained no records of the total mileage driven by either vehicle or the ratio of business to nonbusiness mileage driven during either 1972 or 1973. In the notice of deficiency in docket No. 1002-76, respondent determined that petitioner received dividend income from Finney Construction in the amounts of $32,777.82 in 1972, and $22,660.99 in 1973, as expended by the Company on behalf of petitioner and for his personal benefit. In the notice of deficiency in docket No. 1003-76, respondent determined that a variety of expenses associated with Finney Construction's houseboats were to *575 be disallowed in 1972 and in 1973 as improper travel and entertainment deductions. A further determination made by respondent as to said houseboats in that same otice of deficiency is the disallowance of the Company's depreciation deductions claimed on the returns for 1972 and 1973 in the respective amounts of $6,090.03 and $2,009.62. Respondent found that Finney Construction had failed to establish that the corporate houseboats (entertainment facilities) were used primarily for the furtherance of the Company's trade or business or were directly related to the active conduct of such trade or business. With respect to docket No. 1003-76, respondent also disallowed numerous miscellaneous deductions and depreciation because no records were kept and because they were not legitimate corporate expenses but, rather, were attributable to the Company's sole shareholder as personal expenses. OPINION Issue 1. Houseboat Expenses
Finney Construction argues that the corporate houseboats were used primarily in the furtherance of its business activities and that the associated expenses were ordinary and necessary business expenses within the meaning of section 162(a)(1). To the contrary, *576 respondent asserts that such expenses were incurred in conjunction with an entertainment facility and, as such, are not deductible under the provisions of section 274. It is also the position of respondent that the expenses incurred were neither ordinary nor necessary. This question is essentially one of fact. Commissioner v. Heininger, 320 U.S. 467 (1943); Henry v. Commissioner, 36 T.C. 879 (1961); Schulz v. Commissioner, 16 T.C. 401 (1951). In the instant case, Finney Construction must show that its expenditures were not made for primarily social or personal purposes and that there existed a proximate relationship between the claimed expenditures and its trade or business. Sholund v. Commissioner, 50 T.C. 503 (1968); Henry v. Commissioner, 36 T.C. 879 (1961); Reed v. Commissioner, 35 T.C. 199 (1960); Long v. Commissioner,32 T.C. 511 (1959), affd. 277 F. 2d 239 (8th Cir. 1960). While admittedly some portion of the heretofore described expenses spring from purely social or personal motives, nevertheless, there is sufficient evidence in the record *577 to establish that Finney Construction, through petitioner, actually made some use of the corporate houseboats in the trade or business of real estate promotion and we so hold.[7]
Had the issue hereunder arisen prior to the enactment of section 274, the Cohan rule ( Cohan v. Commissioner, 39 F. 2d 540 (2d Cir. 1930)) would be available to petitioner in order to save a portion of these section 162 business expense deductions from total disallowance. Unfortunately for petitioner, before it is entitled to such respective section 162 and section 167 deductions which it has claimed, the expenses at issue must first run the gauntlet of section 274. [8] That section is a disallowance provision and operates only to disallow expenses which have been found to be allowable under some other section. *578 See H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 423; S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 730-731. Furthermore, Congress granted respondent plenary authority to promulgate the necessary regulations to implement the purposes of section 274, not only under the general rule-making power granted in section 7805, but also under the mandate of section 274(h), which provides, in pertinent part: *579 (h) Regulatory Authority.--The Secretary or his delegate shall prescribe such regulations as he may deem necessary to carry out the purposes of this section * * * We think the regulations reflect a reasonable interpretation of the statute and have so held on numerous occasions. See Andress v. Commissioner, 51 T.C. 863 (1969), affd. 423 F. 2d 679 (5th Cir. 1970); Sanford v. Commissioner,50 T.C. 863 (1968), affd. per curiam 412 F. 2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969); Ashby v. Commissioner, 50 T.C. 409 (1968); Alter v. Commissioner,50 T.C. 833 (1968); Woodward v. Commissioner,50 T.C. 982 (1968); Robinson v. Commissioner,51 T.C. 520 (1968). The pertinent question that we must now examine is whether the corporate houseboats are properly classified as "entertainment facilities" for purposes of section 274(a)(1)(B). If we conclude that they are such facilities, then Finney Construction must hurdle the primary use and directly related tests.To the contrary, if we determine that the houseboats are not entertainment facilities, *580 then section 274 does not obtain and the section 162 and section 167 expenses are deductible. An entertainment facility, under section 274(a)(1)(B), is any real or personal property owned or rented by the taxpayer and used for entertainment. Sec. 1.274-2(e)(2)(i), Income Tax Regs. See also Rev. Rul. 63-144, 1963-2 C.B. 129 (Q & A No. 44). At section 1.274-2(b)(1)(i), Income Tax Regs., entertainment is broadly defined to mean any activity which is of a type generally considered to be entertainment. An objective test is applied in reaching that determination. Sec. 1.274-2(b)(1)(ii), Income Tax Regs. Thus, if the activity is generally considered to be entertainment it will constitute entertainment for purposes of section 274. That is the case sub judice. Finney Construction claims that the purpose of maintaining the corporate houseboats was to have a location near certain construction projects for supervision. The corporate houseboats in question had facilities for entertainment as evidenced, inter alia, by the well stocked larder consisting of alcoholic and nonalcoholic beverages and food. Nor were the houseboats "floating offices" simply because the record discloses *581 that one reason for maintaining them was to promote the sale of homes in the real estate subdivisions.There is ample evidence in the record that even petitioner considered the promotional activities on the corporate houseboats to be entertainment. See also S. Rept. No. 1881, 87th Cong., 2d Sess. 1962-3 C.B. 707, 737-739 (examples A & b/). Finney Construction argues, however, that the exception stated under section 274 (a) (1) (B) adheres. Its principal focus is on the language dealing with the so-called primary use test for a facility. While petitioner must also satisfy the directly related test and the substantiation requirements, the primary use test is met if and only if petitioner demonstrates that the facilities in question were used primarily to further its trade or business under either of two alternative criteria. One is the objective test set forth at section 1.274-2 (e) (4) (i), Income Tax Regs., and the other is the safe haven test found under section 1.274-2 (e) (4) (iii), Income Tax Regs.
Petitioner disregards the objective test and raises the safe haven test in the most truncated fashion in its reply brief. Therein it argues that the houseboats *582 were used for entertainment infrequently on weekends and for business during the week and on most weekends. However, the facts belie such an argument. It is clear from this record that less then 50 percent of the total calendar days of use of the facilities in question by petitioner were days of business use. Thus petitioner fails the "safe haven" test of section 1.274-2 (e) (4) (iii), Income Tax Regs., which provides in pertinent part, "[a] taxpayer shall be deemed to have established that * * * [a] pleasure boat * * * was used primarily for the furtherance of his trade or business if he establishes that more than 50 percent of the total calendar days of use * * * were days of business use." And see Nicholls, North, Buse Co. v. Commissioner, 56 T.C. 1225, 1237 (1971) (boat held not primarily used for business where insufficient showing that days of business use exceeded days of nondeductible personal use); Ashby v. Commissioner, 50 T.C. 409, 416-417 (1968) (no proof that more than 50 percent of the days of use of boat were business related). In addition, Finney Construction maintains that the corporate houseboats were its office (successionally) *583 because it had to have an office to transact business and the only place suitable for such transactions was the houseboat. Therefore, it reasons, the corporate houseboat was its office. The Company buttresses its syllogism with the argument that the Vinton, Virginia, office was being remodeled and that the houseboat was within the proximity of the Bay Roc Marina and its two real estate subdivisions, all of which were under construction and needed constant supervision. We do not agree. While the Vinton, Virginia, office was admittedly in the throngs of a renovation, nonetheless, during the period of the remodeling the office continued to function substantially as it had before the renovation began. The Company furniture, equipment, files and telephone, were continuously maintained there and the only secretarial employee continued to work there. Nor are we persuaded by the assertion that the houseboat was some sort of a field office necessary to the construction of the Bay Roc Marina and the two residential developments. This strains the bounds of credibility in maintaining that a corporation would make a major capital expenditure for the mere convenience of having its office *584 located near its construction sites when one considers that the remodeling of the corporation's principal office was a temporary thing. Furthermore, Finney Construction also owned a mobile trailer that was used at one of the construction sites. Thus, the evidence in the record militates against our finding that the corporate houseboats were offices for the period in question. [9]
Petitioner bears the burden of proof on this issue. Rule 142 (a), Tax Court Rules of Practice and Procedure. Since Finney Construction has not satisfied either the objective or the safe haven tests, necessary for our finding that the corporate houseboats were used primarily for the furtherance of its trade or business, we must find that the corporate houseboats were entertainment facilities within the *585 meaning of section 274 (a) (1) (B). [10]
Finally, no deduction is allowed under section 162 or with respect to an entertainment facility unless petitioner *586 also meets the substantiation requirements set forth under section 274 (d). Under that section, Finney Construction must substantiate by adequate records or by sufficient corroborative evidence, the amount of such expense, the time and place of the entertainment or use of the facility therewith, the business purpose of the expense, and the business relationship to itself of the individuals entertained or using the facility. Moreover, each of the aforementioned elements must be substantiated. Sec. 1.274-5 (c) (1), Income Tax Regs.
Once again, Finney Construction has the burden of proving that these expenditures have been properly substantiated. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142 (a), Tax Court Rules of Practice and Procedure. We believe that Finney Construction has not met its burden of proof. Clearly the evidence presented does not conform with the adequate records requirement of section 1.274-5 (c) (2), Income Tax Regs. Cf. Rutz v. Commissioner, 66 T.C. 879 (1976).By the admission of its chief executive officer, Finney Construction's records were "pitiful at best." It has not introduced any written records or other documentation *587 of the dates of the entertainment or the purpose of the expenditures. Indeed, the only tangible proof offered was the testimonial evidence that a log book existed which contained the names of 20 individuals who had visited the houseboats during the period in question. [11]
We fail to see how some 20 odd names written in a log book, without any other identifying information as required under section 1.274-5 (b) (1), Income Tax Regs., would be sufficient for purposes of section 274 (d).Such a record falls far short of the adequate records requirement. Ashby v. Commissioner, 50 T.C. 409, 415 (1968). In addition, the testimonial evidence offered at trial is *588 frequently vague and equivocal. [12] Many witnesses simply made the bald assertion that business was usually discussed when they visited the houseboats. Such lack of specificity regarding the expenditures, time of the use of the entertainment facility, and the business purpose, flys in the face of the congressional purpose intended by section 274 and fails to adequately corroborate the statements of petitoner. See Nicholls, North, Buse Co. v. Commissioner, 56 T.C. 1225, 1235-1236 (1971); Bradley v. Commissioner, 57 T.C. 1, 9 (1971). The evidence offered by Finney Construction, the bulk of which consisted of its chief executive officer's statements *589 concerning the business connection between himself and "several hundred people," who were at one time on the houseboat, is insufficient to support the deductions. Taking all the evidence presented by Finney Construction in the light most favorable to it, but without the amounts, dates or business purpose of the facility's use known to this Court, we must conclude that Finney Construction has not shown that it is entitled to any deductions for the section 162 and the section 167 expenses attributable to the corporate houseboats and we so hold. Insofar as the food and beverages furnished during entertainment on the facility are concerned, these expenses are subject to the general entertainment rules of section 274 and the substantiation requirements heretofore described. The general entertainment rules of section 274 (a) (1) (A) notwithstanding, it is clear from the record that once again Finney Construction has failed, either by written evidence or corroborative proof, to establish the necessary elements of the expenditures. It must once again satisfy the substantiation requirements of section 274 (d). Even if such entertainment expenses were found to be either directly related *590 or associated with the Company's trade or business, it has failed to substantiate the date, time, place and business purpose of the entertainment as well as the names of the individuals entertained, either by adequate records or by other sufficient evidence. Therefore, such failure of proof results in the denial of Finney Construction's entertainment deductions and respondent's determination in this regard must be upheld. Issue 2. Travel, Entertainment and Miscellaneous Expenses
Pursuant to section 162 (a) (2), a taxpayer is allowed a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including travel expenses incurred while away from home in the pursuit of a trade or business. As we stated under the first issue, section 162 presents a fact question requiring a showing by Finney Construction that such travel, entertainment, and miscellaneous expenses were incurred primarily for business versus personal or social reasons and that a proximate relationship existed between the expenditures and its business. Henry v. Commissioner, 36 T.C. 879, 884 (1961).
Based upon testimony *591 of petitioner, the golf trips to Myrtle Beach were ostensibly to get to know the realtors and to push the properties. Nevertheless, the record is silent on whether such overt socializing was primarily for business and whether a proximate relationship existed between the travel expenditures (meals and lodging) and the Company's business. Of the six realtors who testified for Finney Construction, none indicated that these golfing trips were the motivation or even an influencing factor behind their business association with Finney Construction. We do not doubt that the activities of petitioner on these golf trips might have resulted in some indirect or incidental benefit to the Company's business. This is generally true of any social relationship. But section 162 (a) (2) is specific in its mandate that such travel expenses (meals and lodging) must be proximately related to the taxpayer's business. In our judgment, a remote or incidental nexus is insufficient for section 162 (a) (2) purposes. See Walliser v. Commissioner, 72 T.C. 433, 438 (1979). Finney Construction bears the burden of proof on this issue. Rule 142 (a), Tax Court Rules of Practice and Procedure. *592 Therefore, we cannot find on this record that the golf trips were sufficiently connected with its business to justify classification of the travel expenditures as ordinary and necessary expenses under section 162 (a) (2) and we so hold.
Applying the same section 162 tests to the entertainment expenses, we find that such expenses qualify as ordinary and necessary expenses under that section. Upon the conclusion of a home builders association meeting each month, petitioner would invite a number of the suppliers to accompany him to the Hidden Valley Country Club or some other suitable establishment for refreshments and further business discussions. The expenditures made by petitioner to entertain suppliers were primarily for business reasons and proximately related to the Company's trade or business. Since the requirements of section 162 are satisfied, the next question is to what extent the limitations of section 274 apply. Section 274 (a) (1) (A) will disallow a deduction for any item with respect to an entertainment activity unless the taxpayer establishes that the item was directly related ot, or, in the case of an item directly preceding or following a substantial business *593 discussion, that such item was associated with the active conduct of the taxpayer's trade or business. Moreover, the taxpayer must meet the substantiation requirements of section 274 (d) (2) by either adequate records or by sufficient corroborative evidence. We need not decide whether the amounts expended for entertainment were either directly related or associated with the active conduct of Finney Construction's trade or business because it is abundantly clear from the record that, notwithstanding the satisfaction of either section 274 (a) (1) (A) test, the Company fails the substantiation requirement of section 274 (d) (2). At trial a plethora of canceled checks and other documents were introduced. Such evidence, however, failed to disclose either the identities of the persons present on each occasion or the business purpose for the expenditure, as mandated by section 1.274-5, Income Tax Regs. Therefore, we find that the Company's entertainment expenditures lack substantiation and were properly disallowed by respondent. See Buddy Schoellkopf Products, Inc., v. Commissioner, 65 T.C. 640, 642-645 (1975). A multitude of miscellaneous expenses were deducted *594 by Finney Construction for activities associated with petitioner. Taking these expenditures in the order presented by the parties, the $493 in 1972 and $542 in 1973 for country club dues paid by Finney Construction for petitioner to the Hidden Valley Country Club are to be treated as entertainment facility expenses based upon section 274 (a) (2) (A). Regardless of whether petitioner's club dues constituted ordinary and necessary business expenses deductible under section 162, we hold that petitioner has failed to substantiate those expenses by adequate records or other sufficient evidence, and that therefore these expenses are disallowed pursuant to section 274 (d) and the regulations thereunder. Worthy, Jr. v. Commissioner, 62 T.C. 303, 314-315 (1974); Mathews v. Commissioner, 61 T.C. 12, 26-27 (1973), revd. on another issue 520 F. 2d 323 (5th Cir. 1975); Coors v. Commissioner, 60 T.C. 368, 408-409 (1973). Since the record is deficient concerning the occasions of use, the names, dates or business purpose of the country club, Finney Construction has failed to carry its burden with respect to the expenditures for country *595 club dues. Next, we find the amounts expended and deducted by the Company for the football and hockey game tickets to be nondeductible personal or social expenditures by the Company on behalf of petitioner and the officers of Finney Construction and not proximately related to its trade or business as requred by section 162. [13] Indeed, the evidence of record suggests that the expenditures made on such occasions were primarily motivated by the general feelings of friendship and camaraderie between the Company's president and its vice president. In light of the above, we must conclude that Finney Construction has failed to prove that the disputed expenditures for football and hockey game tickets constituted ordinary and necessary business expenses within the meaning of section 162. [14]
*596 Another miscellaneous expense item deducted by Finney Construction on its 1973 corporate income tax return was a claimed section 167 depreciation deduction for shrubbery. Respondent determined that the proper useful life for the sharubbery in question was double the number of years that the Company had originally estimated. Finney Construction has offered no evidence at trial concerning either the useful life or the type of shrubbery involved. It is apparently under the impression that respondent bears the burden of proof on this question. We disagree. Finney Construction bears the burden of proof on this issue. As we stated in Casey v. Commissioner, 38 T.C. 357, 381 (1962): Respondent's determination is presumptively correct, and the burden rests with petitioners to prove that respondent's determination of useful life and salvage values is erroneous. Such proof should consist of facts known or reasonably anticipated at the end of the year for which depreciation is taken. * * * Finney Construction has offered no proof of any kind on this issue, consequently respondent's determination is sustained. See Lightsey v. Commissioner, 63 F. 2d 254, 255 (4th Cir. 1933). *597 The Company also deducted various amounts for flowers, sunglasses, and numerous sundry items. As with the many items heretofore described, and taking all the evidence presented in the light most favorable to Finney Construction, we find that it has failed to establish the purpose of these many expenditres and that such expenses are not ordinary and necessary business expenses within the meaning of section 162. Insofar as the depreciation regarding the Company vacuum cleaner is concerned, we sustain respondent's determination because of a failure of proof. Issue 3. Automobile Expenses
Finney Construction asserts that the corporate automobiles driven by its president and sole shareholder were used at least 75 percent of the time for business. It is respondent's position that only 50 percent of the use was for business purposes. Petitioner owned a personal automobile that was usually driven by his spouse, [15] and testified that his corporate automobile was driven "every place," including between his home and the office and on the weekends. The only evidence on the amount of such personal use of the Company car is petitioner's own testimony. *598 We do not question his veracity, yet, in the absence of records delineating the amount of personal use, we find that there was a substantial, as opposed to a de minimis, such use of the corporate automobile by petitioner. The burden of proving that respondent's determination is erroneous rests on Finney Construction. Welch v. Helvering, 290 U.S. 111 (1933). It is apparent from the record that the Company has failed to carry its burden of establishing that the business use was at least 75 percent as claimed. There is no evidence as to the total mileage driven or the ratio of business to personal mileage. As to the use of the corporate automobiles during the taxable years in issue, the evidence consists of general and vague testimony, and petitioner concedes that some portion of the use was solely for personal reasons. Respondent is sustained on this item. Finney Construction also objects to respondent's determination of salvage value. It requests that this Court take judicial notice of the increased salvage value as being "outrageously high" and that respondent has failed to support his determination. Respondent increased the salvage value of the 1974 *599 Cadillac automobile from $1,549.26 to $5,000. We decline to take judicial notice of a fact that is subject to considerable dispute as is the one at hand. Once again the Company mistakes the party who has the burden of proof hereunder. It is not respondent who must establish that the salvage value is $5,000 but, rather, it is Finney Construction who must establish to the satisfaction of this Court that $1,549.26 is the proper salvage value. It has failed in this regard. Accordingly, respondent's determination is sustained. Issue 4. Constructive Dividends
The parties stipulated that certain amounts constitute constructive dividends from Finney Construction to petitioner. [16] Aside from these undisputed amounts, petitioner argues that the disallowed deductions claimed by Finney Construction were not expended for his benefit and, therefore, do not constitute constructive dividends to him. *600 While nondeductibel corporate expenditures that generate some economic gain or benefit to the owner-taxpayer are considered to be constructive dividends, nonetheless, the mere fact that such expenditures were nondeductible by the corporation does not necessarily make the payments dividend income under section 61 (a) (7). Ashby v. Commissioner, 50 T.C. 409, 417-418 (1968). In the instant case, we are faced with a variety of nondeductible corporate expenditures. Because of a failure to meet the section 274 (d) substantiation requirements, the corporation has been denied deductions for expenses associated with the corporate houseboats and the food and beverages served thereon. Even though we have approved respondent's determination in disallowing as deductions to the corporation the full amounts claimed, such holding does not decide the question of the includability or excludability in the income of any individual. See H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 423-424. S. Rptr. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 733. It is well settled that corporate expenditures made for the personal benefit *601 of a shareholder, or for making available corporate owned property or facilities for the shareholder's personal benefit, will amount to constructive dividends measured by the value of the respective benefit. Nicholls, North, Buse Co. v. Commissioner, 56 T.C. 1225, 1238 (1971); Challenge Mfg. Co. v. Commissioner, 37 T.C. 650, 663 (1962); American Properties, Inc. v. Commissioner, 28 T.C. 1100, 1114-1115 (1957), affd. 262 F. 2d 150 (9th Cir. 1958). It is further recognized by this Court and other tribunals that personal use of a corporate boat by the corporation's shareholders will trigger a constructive dividend to them. United Aniline Co. v. Commissioner, 316 F. 2d 701 (1st Cir. 1963), affg. a Memorandum Opinion of this Court; Nicholls, North, Buse Co. v. Commissioner, supra; Ashby v. Commissioner, supra; Challenge Mfg. Co. v. Commissioner, supra; American Properties, Inc. v. Commissioner, supra.
The difficulty in the instant case is that Finney Construction has failed to give this Court any detailed proof of the business *602 use of its corporate houseboats during taxable years 1972 and 1973. Such lack of proof resulted in denial of the section 162 deductions pursuant to section 274. This dearth of evidence notwithstanding, we are satisfied from the record that some portion of the boats' use was for corporate business purposes. In this situation, doing the best we can with this record, and applying the Cohan rule enunciated in Cohan v. Commissioner, 39 F. 2d 540, 544 (2d Cir. 1930), we find that 20 percent of the operating expenses, depreciation, and food and beverage expenses, were attributable to business and, accordingly, 80 percent of such amounts represent corporate expenses which are constructive dividends to petitioner. Cf. Schwartz v. Commissioner, 60 T.C. 728, 744 (1973). Several business-related events support our allocation of the 20-percent business use. Meetings with realters, prospective buyers, suppliers, and other business associates (attorneys, bankers, etc.) did occur on the boats. Real estate sales resulted on the boats as did a variety of other promotional activities. In contrast, the fact that many individuals who visited the boatswere *603 petitioner's friends and the social nature of their meetings indicates the personal use of the boats. Moreover, the admitted use of the facility by petitioner and his family, as well as petitioner's relatives, cannot be viewed as business related and, as such, forms the basis for our finding an 80-percent personal use of the facility. The final categories of disallowed expenses are travel, entertainment, miscellaneous and automobile. To be considered constructive dividends these expenditures must meet a twofold test; that is, not only must they be nondeductible to the corporation but they must also represent some economic gain or benefit to petitioner. Palo Alto Town & Country Village, Inc. v. Commissioner, 565 F. 2d 1388, 1391 (9th Cir. 1977). The disallowed travel expenses attributable to several golf trips made by petitioner were not, in our opinion, without some tangible economic benefit to petitioner. On the other hand, neither were the trips completely devoid of a business purpose, albeit any business results were, in all likelihood, incidental and in futuro. We are satisfied that petitioner did in fact incur some portion of the disputed expenses on *604 behalf of Finney Construction and, as such, they would not be considered a constructive dividend. We find that portion to be 10 percent requiring the balance to be treated as a constructive dividend to petitioner. As to the disallowed entertainment expenses, these are on a somewhat different ground, because the entertainment of local suppliers after a meeting appears to directly aid Finney Construction. However, because of our inability under this record to establish the exact amount of petitioner's own entertainment expenses, we conclude that some portion is attributable to his personal benefit and, as such, would be a constructive dividend to him. An allocation between business and personal expenses is therefore appropriate and we find as a fact that 75 percent of the amount in controversy in respect of the entertainment expenses represents corporate expenses which may not be treated as constructive dividends to petitioners. Of the miscellaneous expenses, we find from the evidence in the record that payment of the country club dues was clearly for the economic benefit of petitioner and, as such, is a constructive dividend in the full amount. [17] Moreover, the amounts expended *605 by Finney Construction for the football and hockey game tickets were also purely for the benefit of petitioner and are constructive dividends. Under section 167(a), a deduction for depreciation is allowed on property used in the trade or business. It seems clear from the facts in the instant case that the shrubbery was such property and was confined solely to business use. Therefore, the denial of that portion of the depreciation deduction attributable to the increased useful life estimate is not a constructive dividend to petitioner. This same result adheres in the case of the Company's vacuum cleaner. With respect to the amounts expended by Finney Construction for flowers, sunglasses, and numerous sundry items, it is clear that such items were for petitioner's benefit and, given the almost complete lack of evidence on these items, we find such amounts were constructive dividends to petitioner in full. As to the corporate automobiles' operating expenses and depreciation the record is silent, aside from petitioner's own self-serving statements that would cast doubt on respondent's *606 determination. We therefore conclude that petitioner's 50-percent use of the corporate automobiles during the years in issue constituted a constructive dividend to him. [18]
The precise dollar amounts to be included in the income of petitioner as constructive dividends will be determined under the Rule 155 computation.The petitioner has not shown that there were not earnings and profits available in Finney Construction out of which the amounts in question could be paid and be properly treated as taxable dividends. Indeed, an inspection of the corporate returns for the taxable years in issue indicates that sufficient earnings and profits are available. Issue 5. Additions to Tax under Section 6653(a)
The final issue is whether respondent properly determined the addition to tax under section 6653(a). [19] That section provides that if any part of an underpayment is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Finney Construction has the *607 burden of proving that the imposition of this penalty was erroneous. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Finney Construction argues that where a taxpayer keeps records sufficient to show its income and deductions, which respondent does not contest, the failure to retain specific records as required by section 274 is neither negligent nor an intentional disregard of rules and regulations. It supports this argument by citing Robinson v. Commissioner, 51 T.C. 520 (1968), affd. per curiam 422 F. 2d 873 (9th Cir. 1970). In Robinson, supra, the taxpayer maintained regular books of account listing his income, *608 various office expenses, and other expenses. The only difficulty with his records was the fact that he did not have the detailed receipts and diary to support the deductions for travel and entertainment expenses which he claimed. However, the taxpayer did keep some detailed records, most notably canceled checks and certain receipts, with respect to his travel and entertainment expenses. In this Court reviewed opinion, we held that the taxpayer was not liable for the addition to tax for negligence under section 6653(a), because of his failure to comply with the requirements of section 274, and further stated at 51 T.C. 520, 542: The fact that we do not consider petitioner's records adequate to substantiate all of his claimed travel and entertainment expense deductions in 1961 and 1962 or to comply with the provisions of section 274 for the year 1963 does not require the conclusion that petitioner has been negligent or in intentional disregard for respondent's rules and regulations in the manner in which he maintained his records. Petitioner kept records which were sufficientlyaccurate to show his income and deductions using his theory that all his expenditures *609 for food, entertainment, liquor, and gifts were deductible business expenses. No items of income were omitted or expenditures duplicated. The record shows that respondent was able to make the adjustments he deemed necessary working from petitioner's own books. Such bookkeeping methods are not negligent or in intentional disregard of respondent's rules and regulations. * * * [Emphasis supplied.] We believe that Robinson, supra, is distinguishable from the instant case. Finney Construction has failed to maintain any record of its expenses with respect to travel and entertainment. This failure not only violates the specific requirements of section 1.274-5(c)(2), Income Tax Regs., but also the more general record keeping demands of section 1.6001-1(a), Income Tax Regs.[20]
*610 In addition, the underpayments in tax result, in large measure, from the disallowance of expenditures which respondent determined were for petitioner's benefit rather than for the Company's benefit. As pointed out hereinabove, Finney Construction has failed to show error in respondent's determination. Such failure was a direct result of the fact that records were not kept showing the details as to the individuals who were entertained as required by section 1.274-5(c), Income Tax Regs. Finney Construction should have realized that detailed record keeping and substantiating evidence are necessary within the context of deducting travel and entertainment expenditures. [21] See Berkley Machine Works & Foundry Co., Inc. v. Commissioner, 422 F. 2d 362 (4th Cir. 1970), affg. a Memorandum Opinion of this Court. Finney Construction has conceded that some of these expenses were admittedly for the personal benefit of its president and sole shareholder. The deduction by a corporation of personal expenditures as business expenses is clearly *611 negligence. [22]
Under all the circumstances of the instant case we sustain the respondent's determination as to the additions to tax. Because of the conclusions reached herein and to reflect the concessions made by the parties, Decisions will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
2. The Aqua Net Swimming and Racket Club is a private club for residents of Montgomery Village and is a wholly owned subsidiary of Finney Construction.↩
3. Finney Construction maintained some facsimile of a record in terms of a log book. This journal was characterized at the trial by petitioner as "pitiful at best." It contained no more than 20 names, and no further information.↩
4. At all times relevant to this case, petitioner was a member and officer of the Roanoke Valley Home Builders Association. The association had a meeting every month.Following such meetings, petitioner would sometimes invited several persons (usually suppliers) to accompany him to the Hidden Valley Country Club for further business discussions. He would rdinarily pay for any refreshments served to the suppliers.↩
5. Respondent allowed Finney Construction a depreciation deduction of $21.70 for this item in 1972 and a similar deduction of $25.98 for this item in 1973. ↩
6. The $151.30 was a depreciation deduction which was based upon a useful life of 10 years. Respondent determined that the useful life for the shrubbery was 20 years and thereby allowed Finney Construction a depreciation deduction of $75.65 for taxable year 1973.↩
7. It is clear from the findings of fact that meetings with realtors, prospective buyers, suppliers, and other business associates occurred on the houseboats and that such meetings establish a proximate relation between the cost of the expenditures and the Company's business as a real estate developer. Cf. Larrabee v. Commissioner, 33 T.C. 838, 843↩ (1960).
8. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (a) Entertainment, Amusement, or Recreation.-- (1) In general.--No deduction otherwise allowable under this chapter shall be allowed for any item-- (A) Activity.--With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or (b) Facility.--With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business, and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business. * * *
(d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item and, (D) the business relationship to the taxpayer of persons entertained, using the facility,↩ or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. [Emphasis supplied.]
9. We are aware that Finney Construction was, in reality, selling a "Way of life" and would invite, through petitioner, the prospective buyers and their real-estate agents to the corporate houseboat for the purpose of closing the sale. The mere fact that the corporate houseboat may have been used sometimes as a closing facility, however, is insufficient to transform that facility into an office.↩
10. Since we have found that the houseboats were entertainment facilities, we need not consider Finney Construction's argument raised under section 1.274-2 (e) (2) (ii), Income Tax Regs., that the facilities were used only incidentally for entertainment purposes and, therefore, are not entertainment facilities for purposes of section 274 (a) (1) (B). We also note that, assuming arguendo the satisfaction of the primary use test described above, it is highly problematical whether Finney Construction would satisfy the directly related test. This is because the Company would fail the requirement set forth at section 1.274-2 (c) (3) (i), Income Tax Regs., wherein a general expectation of deriving a business benefit (goodwill) is not sufficient for the directly related test. Cf. Walliser v. Commissioner, 72 T.C. 433, 442 (1979). St. Petersburg Bank & Trust Co. v. United States, 362 F. Supp. 674, 680 (M.D. Fla. 1973), affd. in an unpublished order 503 F. 2d 1402↩ (5th Cir. 1974).
11. Finney Construction offered at trial a one-page listing of homeowners in its two real estate subdivisions who "had been entertained or in some way used the houseboats." At trial several individuals from that list were called to testify by respondent and admitted that they had never been on the houseboat. Aside from the problem of meeting the elements under respondent's regulations (which such list clearly fails to satisfy), we therefore attribute little, if any, probative weight to the proferred list.↩
12. For instance, only one of the 17 witnesses called by Finney Construction to corroborate the testimony of its chief executive officer could even recall a specific date on which the witness had visited the facility. Furthermore, there is no evidence in the record to indicate how many witnesses actually visited the houseboat each day or, for that matter, how long each witness remained on the facility ostensibly discussing business. See Rutz v. Commissioner, 66 T.C. 879, 885↩ (1976).
13. We note that other persons also received sporting events tickets from Finney Construction. Thus, a vice president of First National Exchange Bank and a manfacturer's representative received them. The record is devoid of any evidence showing that receipt of such tickets was for any reason other than their personal friendship with petitioner. ↩
14. Assuming, arguendo, that Finney Construction satisfies the requirements of section 162, it is clear from the record that it once again fails the substantiation requirement of section 274 (d) (2). In addition, section 274 (e) (5) furnishes no safe haven for such expenditures because in the instant case the recreational expenses were incurred for petitioner (sole shareholder) and the Company's two officers. See sec. 1.274-2 (f) (2) (v), Income Tax Regs.↩
15. We note that the parties entered into an oral stipulation at trial concerning the sole shareholder's personal automobile which was driven by his spouse and used 100 percent of the time for personal reasons. Therefore, any business deductions with respect to such automobile taken by the sole shareholder and his spouse on their joint return for the taxable years in issue are properly denied since they represent section 262 expenses.↩
16. With respect to 1972, petitioner conceded that Finney Construction paid $5,839.85 on his behalf and for his personal benefit and that such amounts constitute constructive dividends to him. These amounts comprise $5,771.60 for trips to the respective locations of Honolulu, Hawaii, and Law Vegas, Nevada, and $68.25 for automobile expenses attributable to petitioner's personal automobile. Respondent has conceded that for that same taxable year $4,537.04 does not constitute constructive dividends to petitioner. Therefore, a $300 legal fee, $4,015.54 in expenses attributable to several business trips, and $221.50 spent to purchase various coins, were not considered to be constructive dividends. With respect to 1973, petitioner conceded that $931.68 amounts to a constructive dividend in that year. This sum is comprised of $572.29 for a trip to Las Vegas, Nevada, and $359.39 for automobile expenses attributable to petitioner's personal automobile. For that same taxable year, respondent has conceded that $265 does not constitute a constructive dividend to petitioner. Such amount is comprised of $130 expended for various coins and $135 disbursed for a decorative pistol.↩
17. See, Zimco Electric Supply Co. v. Commissioner, T.C. Memo. 1971-215↩.
18. Perrotto v. Commissioner, T.C. Memo. 1977-99; Hall v. Commissioner, T.C. Memo. 1976-311↩.
19. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. -- If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩
20. Sec. 1.6001-1(a). In general↩. Except as provided in paragraph (b) of this section, any person subject to tax under subtitle A of the Code * * * or any person required to file a return of information with respect to income, shall keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information.
21. See Brotman v. Commissioner, T.C. Memo. 1977-65; Bowman v. Commissioner, T.C. Memo. 1969-23↩.
22. Cf. Steel v. Commissioner, T.C. Memo. 1969-254 (wherein petitioner was not liable for the addition to tax for negligence under section 6653(a) because of his failure to keep detailed records of his travel and entertainment expenses during 1964. However, this holding on the section 6653(a) question was undoubtedly based, in part, upon the fact that during 1964 petitioner was unaware of the new changes in the law requiring detailed record keeping and substantiating evidence and, like the taxpayer in robinson v. Commissioner, 51 T.C. 520 (1968), affd. per curiam 422 F. 2d 873↩ (9th Cir. 1970), he had maintained perfectly adequate books and records to reflect his income and expenses).