OPINION. ARUNdell, Judge: Three principal issues are raised in this proceeding: First, the deduction as traveling expense in 1942 and 1943 of the cost of petitioner’s plane fare from Seattle to Cleveland and the cost of his meals and lodging while in Cleveland during those years; second, the deductibility of certain so-called entertainment expenses paid during the years 1942, 1943, and 1945; and, third, the deduction as a theft or embezzlement of a sum equal to the value of certain bonds jointly held by petitioner and his wife which the latter appropriated to her own use. The first issue we think is without merit. Petitioner had for many years been employed by United Air Lines and its predecessor as an air line pilot. During this period he made his home in Seattle. At some time prior to June 30, 1942, he was contacted by Jack & Heintz and offered employment in Cleveland as a test pilot, which position he accepted after obtaining a 30-day leave of absence from United. It is true that originally it was thought that his stay in Cleveland would be short, but, in fact, it extended into years. This fact we regard as of little significance. Petitioner came to Cleveland to accept a new and different job and his work with Jack & Heintz had no connection with his duties as an air line pilot with United. While in Cleveland petitioner was not in the pursuit of a business of his own or of his former employer in Seattle. Cleveland succeeded Seattle as his principal place of business from and after June 30, 1942, and therefore his presence in Cleveland did not involve travel away from home within the meaning of section 23 (a) (1) (A) of the Internal Revenue Code. Commissioner v. Flowers, 326 U. S. 465; John Henry Chapman, 9 T. C. 619; Arnold P. Bark, 6 T. C. 851; S. M. R. O'Hara, 6 T. C. 841; Barnhill v. Commissioner, 148 Fed. (2d) 913; Mort L. Bixler, 5 B. T. A. 1181. Such traveling expenses as petitioner incurred while away from Cleveland and in the performance of his duties as a test pilot with Jack & Heintz were paid by the latter and consequently there would appear to be no “necessary” expenses that were payable out of his own pocket. The expenses allowed by respondent for 1942 incident to petitioner’s employment with United are not in dispute, nor is the $12 allowed for physical examinations in 1943. The second issue has to do with the deductibility of so-called entertainment expenses. It seems to have been accepted between petitioner and Jack & Heintz that the latter would pay all expenses incurred by petitioner on behalf of the company, but that certain minor expenses would be absorbed by petitioner, and in increasing petitioner’s salary from $15,000 to $25,000 per year Jack & Heintz recognized this fact. There seems to be no question but that these expenditures by petitioner resulted in his performing his duties as a test pilot more efficiently, principally because it permitted his constant association with technicians from Wright Field who were working with him in the testing of certain equipment that Jack & Heintz had under contract for the Air Forces. The sums expended were not for entertainment as such, but were outlays incident to the work being jointly performed by petitioner and his associates from Wright Field. In principle, we agree with petitioner that these expenditures constituted a deduction for tax purposes. The real difficulty in this case is in determining from the record the amount of such expenses, as petitioner kept no records and has produced no evidence from which an accurate determination can be made of the expenditures sought to be deducted. Under such circumstances, we are obliged to determine as best we may from the record the amount of the deductions bearing most heavily upon the taxpayer. Cohan v. Commissioner, 39 Fed. (2d) 540. Having in mind that Jack & Heintz stood ready to or did reimburse petitioner for all but minor expenses, we have determined that the petitioner incurred and paid, and may properly deduct as ordinary and necessary business expenses, $500 in 1942, $900 in 1943, and $800 in 1945. The third issue raises an interesting question. Petitioner claims that his wife stole certain Government bonds from him and that he is therefore entitled to a loss by reason of the theft. The bonds were taken by his estranged wife on March 30, 1945, when she left petitioner and within a few days instituted divorce proceedings. The bonds alleged to be stolen were in the joint names of petitioner and his wife and were deposited in a lock box which was accessible to both spouses. Mrs. Tyler called petitioner’s office and advised that she was leaving him and that she intended to take the bonds with her. Apparently petitioner made no effort to stop her and it was not until the following day that he visited the lock box and found the bonds gone. It is true that within a few days he filed a suit for divorce against his wife, in which he attempted to secure an order enjoining her from disposing of the bonds. However, he did not seek to have criminal proceedings instituted against her, nor did he attempt to have the bonds canceled by the Treasury Department and new bonds issued, which is a permissible procedure where Government bonds have been stolen. It seems well established under the common law that one spouse may not be guilty of larceny of the other’s belongings, and in most states it is held that this rule is not affected by the passage of a married woman’s property act. It seems to be equally well established that one who owns goods jointly with another ordinarily has the same right of possession as the coowner and therefore he can not commit larceny in respect of such goods. 36 C. J. 782, 783; 32 Am. Jur. 953, and cases collected therein. We are satisfied after a careful consideration of the facts, the course of conduct of the parties, and the law as it is generally accepted and particularly as it appears to have been laid down in Ohio (State v. Phillips, 85 Ohio 317; 97 N. E. 976; secs. 12447 and 12467, Ohio General Code) that the wife’s action in taking the bonds in question did not constitute either larceny or embezzlement within the meaning of section 23(e) (3) of the Internal Revenue Code. Petitioner’s alternative argument that the taking of the property constituted a loss from a transaction entered into for profit under section 24 (e) (2), we think, is without merit. Whatever loss was sustained by the petitioner can not be reasonably regarded as a proximate result or a logical consequence of his purchase of the bonds. The loss was incident to the disruption of petitioner’s family. Decision will he entered wider Rule 50.