JAMES B. WALLISER AND CAROL SUE WALLISER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2368–77.    Filed June 7, 1979.

*Ira W. Silverman* and *Donald J. Forman,* for the petitioners.
*Deborah A. Butler,* for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of $323 in petitioners' income tax for the taxable year 1973 and a deficiency of $252.45 in petitioners' income tax for the taxable year 1974. At issue is whether amounts expended by petitioners for foreign travel are deductible as ordinary and necessary business expenses under section 162[1] and, if so, whether the requirements of section 274 have been satisfied.[2]

FINDINGS OF FACT

Some of the facts were stipulated and are found accordingly. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

James B. Walliser (James) and Carol Sue Walliser (Carol),

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect in the taxable years at issue, unless otherwise provided.

[2] A determination of the amounts of medical expenses and sales taxes which are deductible is dependent upon the outcome of this issue.

husband and wife, filed joint individual income tax returns for the taxable years 1973 and 1974 with the Internal Revenue Service, Southwest Regional Service Center, Austin, Tex. Petitioners resided in Dallas, Tex., during the taxable years at issue and at the time of filing the petition herein.

During the taxable years 1973 and 1974, James was vice president and branch manager of the First Federal Savings & Loan Association (First Federal) of Dallas, Tex., Richardson branch office. James began his career at First Federal as a trainee in mortgage lending and an appraiser. He later became a branch manager and a loan production officer. Subsequent to the taxable years at issue, James was made the head of the interim loan department of First Federal. Prior to his initial association with First Federal in 1964, James was primarily engaged in the business of home building in Dallas County, Tex.

As branch manager of the Richardson office of First Federal, James supervised all aspects of the branch's operations, but his primary responsibility was the marketing of permanent and interim loans. James was assigned loan production quotas, and he expected to receive annual raises in his salary if he met his yearly quotas, although First Federal was under no commitment to give James a raise in salary or a bonus if a quota was met. James had authority to make loans to customers in Texas within a 100-mile radius of Dallas, although, if a customer found the Richardson branch inconvenient, James would send him to another branch and would not in that case receive credit towards his quota for any loans made. James met his quotas and received salary raises at the end of 1973 and 1974.

During the taxable years at issue, petitioners traveled abroad in tour groups organized primarily for people involved in the building industry. In 1973, petitioners took two such trips. The first was to Rio de Janeiro and was sponsored by General Electric Co. (General Electric). It began on March 23, 1973, and ended on March 31, 1973. Their second trip, to London and Copenhagen, was sponsored by Fedders Co. (Fedders) and ran from October 3, 1973, to October 15, 1973.

In 1974, petitioners went to Santo Domingo on a tour organized by Fedders which began on September 27, 1974, and ended on October 4, 1974.

Petitioners also made reservations on a General Electric tour

to London and Amsterdam which ran from April 10, 1974, to April 20, 1974, but canceled their reservations.

Petitioners had first gone on a General Electric builders' tour when James was a builder prior to joining First Federal. Petitioners had been on the Fedders tours only twice before the taxable years at issue.

The majority of the people on a General Electric or Fedders builders' tour were builders and developers from Texas and their spouses. The group also included lenders, title company personnel, and other users and distributors of the sponsor's product. The dealers and builders who participated in the Fedders builders' tours did so as part of the Fedders incentive program through which they were able to earn the cost of the tours in whole or in part by purchasing or selling a certain amount of central air conditioning equipment in a particular year. Fedders presented awards during the tours to some people it considered outstanding in its sales and promotional programs but conducted no business meetings.

The builders' tours were arranged as guided vacation trips, with sightseeing and other recreational activities. Petitioners, however, went on the tours because James found that they provided an unusual opportunity to associate with many potential and actual customers and believed that the tours would generate business, thereby helping him to meet his loan production quotas and obtain salary raises. He spent as much time as possible talking with builders whom he already knew and getting acquainted with builders he had not previously met to make them aware of First Federal's services and of his own skills. His conversations frequently centered on conditions in the building industry and the availability of loans for builders, but he did not negotiate specific business transactions on the tours or conduct formal business meetings. Social relationships formed or renewed on the tours between petitioners and builders and their spouses resulted in a substantial amount of loan business for First Federal.

Because James spent so much time with actual or potential customers, petitioners found the tours to be strenuous, and Carol, in particular, did not enjoy them. Petitioners took vacations with their family in the vicinity of Austin, Tex., in 1973 and in Puerto Vallarta, Mexico, in 1974.

Prior to 1973, First Federal had paid for James to participate

in builders' tours. During 1973 and 1974, First Federal stopped reimbursing employees for a variety of previously reimbursed expenses as part of a program of overall budget cutbacks. During the taxable years in issue, First Federal's policy was to pay entertainment costs directly, or to provide reimbursement for expenses, when an officer of First Federal entertained current customers of the company at civic, social, or business meetings. The company did not customarily reimburse officers for the costs of goodwill meetings or trips for current customers along with prospective customers; however, the board of directors expected the officers, especially vice presidents in charge of marketing activities, to be active in cultivating new customers. First Federal did not reimburse petitioners for any travel expenses incurred in connection with the Fedders and General Electric tours taken by them in 1973 and 1974. James was, however, given leave with pay, in addition to his normal 2-week paid vacation, in order to participate in the tours.

The basic price of each of the builders' tours covered transportation, lodging, and meals.[3] Petitioners paid the basic prices, aggregating $2,798, for their two 1973 trips and the basic price of $850 for their 1974 trip. In addition, petitioners paid $1,478, the full basic price of the 1974 General Electric tour, and received only a partial refund of $800. The amount not refunded, $678, represented transportation costs to General Electric.

On their 1973 and 1974 tax returns, petitioners deducted, as employee business expenses, one-half of the price of each of the tours (the portion attributable to James' travel), including one-half of the amount not refunded upon cancellation of their reservations for the 1974 General Electric tour.

OPINION

Initially, we must determine whether petitioners are entitled, under section 162, to deduct as employee business expenses costs incurred by James in connection with his travel on tours for builders organized by General Electric and Fedders. If we hold that the requirements of that section are satisfied, then we must face the further question as to the extent to which the limitations of section 274 apply.

---

[3]On each tour, petitioners spent substantial amounts in excess of the basic price, but, since petitioners do not seek to deduct such amounts, they are not relevant herein.

Section 162(a)(2) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including traveling expenses incurred while away from home in the pursuit of a trade or business. The question is essentially one of fact. *Commissioner v. Heininger*, 320 U.S. 467, 475 (1943); *Henry v. Commissioner*, 36 T.C. 879, 883 (1961). Petitioners must show that the expenses were incurred primarily for business rather than social reasons and that there was a proximate relation between the cost of the builders' tours and James' business as an officer of First Federal. *Henry v. Commissioner, supra* at 884; *Larrabee v. Commissioner*, 33 T.C. 838, 841 (1960).

James' primary responsibility as an officer of First Federal was marketing loans. He was assigned loan production quotas and considered yearly increases in his salary to be contingent upon meeting those quotas. The participants in the General Electric and Fedders tours were not a random group of Texas vacationers. On the contrary, they were largely builders and developers from Texas, the area in which First Federal operated. Thus, the tours were a useful means of maintaining relations with existing customers of First Federal and reaching prospective customers. Indeed, the record indicated that some of the participants considered the social relationships with James, including their association with him on the tours, as an influencing factor in their decisions to seek loans from First Federal.

The fact that, during the years at issue, First Federal did not reimburse James for the costs of his travel does not render his expenses nondeductible. Where a corporate officer personally incurs expenditures which enable him to better perform his duties to the corporation and which have a direct bearing on the amount of his compensation or his chances for advancement, unreimbursed expenses may be deductible under section 162. *Heidt v. Commissioner*, 274 F.2d 25, 27–28 (7th Cir. 1959), affg. T.C. Memo. 1959–31; *Schmidlapp v. Commissioner*, 96 F.2d 680, 681–682 (2d Cir. 1938); *Christensen v. Commissioner*, 17 T.C. 1456 (1952); *Abraham v. Commissioner*, 9 T.C. 222, 228 (1947).[4]

---

[4] The rule is otherwise where the corporate employee is entitled to, but does not seek, reimbursement from the corporation. *Stolk v. Commissioner*, 40 T.C. 345, 357 (1963), affd. per curiam 326 F.2d 760 (2d Cir. 1964); *Coplon v. Commissioner*, T.C. Memo. 1959–34, affd. per curiam 277 F.2d 534 (6th Cir. 1960).

First Federal expected its officers in charge of marketing activities to participate in public or social functions without reimbursement and examined their performance in this regard when evaluating their compensation and overall value to the company. Compare *Tyler v. Commissioner*, 13 T.C. 186, 192 (1949). James met his loan quotas in 1973 and 1974 and received raises in his salary at the end of those years. In a later year, he became head of First Federal's interim loan department.

Moreover, the evidence tends to show that First Federal considered the trips valuable in generating goodwill. Although First Federal, which was in the midst of a program of budget cutbacks in 1973 and 1974, did not reimburse James for the tours as it had done in prior years, it continued to grant him additional leave with pay for the time he was on the tours.

Finally, the testimony of petitioners, and particularly of Carol, which we found straightforward and credible, tended to show that the tours were strenuous, and not particularly enjoyable, experiences because of the amount of time expended in cultivating business and, therefore, that petitioners did not undertake the tours for primarily personal reasons.

We conclude that, under the circumstances of this case, the requisite proximate relation has been shown to constitute James' travel expenses as "ordinary and necessary" business expenses within the meaning of section 162(a)(2).

We now turn our attention to the applicability of section 274, the issue on which respondent has concentrated most of his fire. That section disallows a deduction in certain instances for expenses which would otherwise be deductible under section 162. Respondent argues that the requirements of section 274 are applicable here and have not been satisfied in that petitioners have failed: (1) To show that James' trips were "directly related" to the active conduct of his business (sec. 274(a)); (2) to substantiate the business purpose of his expenditures (sec. 274(d)); and (3) to allocate his time spent in foreign travel between personal and business activities (sec. 274(c)).

Section 274(a) provides in part:

(a) ENTERTAINMENT, AMUSEMENT, OR RECREATION.—

(1) IN GENERAL.—No deduction otherwise allowable under this chapter shall be allowed for any item—

(A) ACTIVITY.—With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the

case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, * * *

* * * * * * *

and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business.

Petitioners urge that the "directly related" test of section 274(a) is not applicable because the expenditures at issue were incurred for travel, not entertainment. We disagree.

Section 274(a) relates to activities of a type generally considered to constitute "entertainment, amusement, or recreation." Section 1.274–2(b), Income Tax Regs., defines "entertainment, amusement, or recreation" as follows:

(b) *Definitions*—(1) *Entertainment defined*—(i) *In general.* For purposes of this section, the term *"entertainment" means any activity which is of a type generally considered to constitute entertainment, amusement, or recreation, such as* entertaining at night clubs, cocktail lounges, theaters, country clubs, golf and athletic clubs, sporting events, and on hunting, fishing, *vacation and similar trips, including such activity relating solely to the taxpayer* or the taxpayer's family. * * *

(ii) *Objective test. An objective test shall be used to determine whether an activity is of a type generally considered to constitute entertainment.* Thus, if an activity is generally considered to be entertainment, it will constitute entertainment for purposes of this section and section 274(a) regardless of whether the expenditure can also be described otherwise, and even though the expenditure relates to the taxpayer alone. This objective test precludes arguments such as that "entertainment" means only entertainment of others or that an expenditure for entertainment should be characterized as an expenditure for advertising or public relations.

[Emphasis added.]

This regulation is squarely based on the language of the legislative history of section 274 and we find it to be valid as it relates to the issue herein.[5]

---

[5] S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 707, 733–734, states in part:

"Entertaining guests at night clubs, country clubs, theaters, football games, and prizefights, and on hunting, fishing, *vacation and similar trips* are examples of activities that constitute 'entertainment, amusement, and recreation.' * * * "

* * * * * * *

"An objective standard also will overrule arguments such as the one which prevailed in *Sanitary Farms Dairy, Inc.* (25 T.C. 463 (1955)) that a particular item was incurred, not for entertainment, but

This regulation and the Congressional committee reports from which it is derived leave no doubt that the deductibility of an expenditure for travel, on what would objectively be considered a vacation trip, is subject to the limitations of subsection 274(a), even where the expenditure relates solely to the taxpayer himself. See H. Rept. 1447, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 405, 424; S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 707, 734. Furthermore, section 1.274–2(b)(1)(iii), Income Tax Regs., provides that "any expenditure which might generally be considered * * * either for travel or entertainment, shall be considered an expenditure for entertainment rather than for * * * travel." This regulation too has a solid foundation in the statute, which provides, in section 274(h), authority for the promulgation of regulations necessary to carry out the purpose of section 274[6] and in the committee reports, which provide that rules be prescribed for determining whether section 274(a) should govern where another section is also applicable. H. Rept. 1447, *supra*, 1962–3 C.B. at 534; S. Rept. 1881, *supra*, 1962–3 C.B. at 882.

Although the participants in the tours that petitioners took were drawn, for the most part, from the building industry, their activities—sightseeing, shopping, dining—were the same as

---

for advertising purposes. That case involved a big-game safari to Africa. * * * Under the bill, if the activity typically is considered to be entertainment, amusement, or recreation, it will be so treated under this provision regardless of whether the activity can also be described in some other category of deductible items. *This will be so even where the expense relates to the taxpayer alone."*
[Emphasis added.]

See also H. Rept. 1447, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 405, 424, 526–527.

[6]Sec. 274(h) states in part:

(h) REGULATORY AUTHORITY.—The Secretary or his delegate shall prescribe such regulations as he may deem necessary to carry out the purposes of this section, including regulations prescribing whether subsection (a) or subsection (b) applies in cases where both such subsections would otherwise apply.

We do not read the last clause to preclude provision by regulation for instances of overlap between subsec. 274(a) and other subsections of 274 in light of the committee reports, which state:

*"Regulatory authority.*—Subsection [(h)] * * * authorizes the Secretary of the Treasury or his delegate to prescribe such regulations as he deems necessary to carry out the purposes of section 274. For example, under this authorization rules will be prescribed for determining whether subsection (a) or subsection (b) applies to an expenditure to which both subsections might be considered to apply. Items are to be given the character ascribed to them by the public generally and without regard to the revenue consequences of the characterization. *In addition, the Secretary of the Treasury or his delegate is required to prescribe rules for determining whether section 274(a) or (b) applies with respect to an expenditure which could also be described as falling solely within the purview of some other section.* This overlap problem will be resolved by ascribing to the expenditure a character which carries out the purposes of section 274. * * * [H. Rept. 1447, *supra*, 1962–3 C.B. at 534; S. Rept. 1881, *supra*, 1962–3 C.B. at 881–882. Emphasis added.]"

those of other tourists. Fedders presented some awards to persons considered outstanding in its sales or promotional programs on the tours but did not conduct any business meetings. Nor is there any evidence that any business meetings were conducted on the 1973 General Electric tour; on the itinerary for the 1974 tour, for which petitioners canceled their reservation, only 1 hour out of 10 days of guided tours, dinners, and cocktail parties, was set aside for a business meeting. Under the objective test set forth in the regulations, it is irrelevant that petitioners did not regard the trips as vacations or did not find them relaxing. Clearly, the tours were of a type generally considered vacation trips and, thus, under the objective test, constituted entertainment for the purposes of section 274(a). Therefore, the requirements of that section must be satisfied.

For a deduction to be allowed for any item under section 274(a)(1)(A), the taxpayer must establish that the item was directly related to the active conduct of the taxpayer's trade or business or, in the case of an item directly preceding or following a substantial and bona fide business discussion, that such item was associated with the active conduct of the taxpayer's trade or business.

The "directly related" test requires that a taxpayer show a greater degree of proximate relationship between an expenditure and the taxpayer's trade or business than that required by section 162. H. Rept. 1447, *supra,* 1962–3 C.B. at 424; Conf. Rept. 2508, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 1129, 1143–1144. Section 1.274–2(c)(3), Income Tax Regs., provides that, for an expenditure to be directly related to the active conduct of the taxpayer's trade or business, it must be shown that the taxpayer had more than a general expectation of deriving some income or business benefit from the expenditure, *other than the goodwill* of the person or persons entertained. While the language of this regulation is awkward and not completely apt in a situation where the entertainment expenditure relates to the taxpayer alone, it is clear, nevertheless, that more than a general expectation of deriving some income at some indefinite future time is necessary for an expenditure to be deductible under section 274(a). H. Rept. 1447, *supra,* 1962–3 C.B. at 424; Conf. Rept. 2508, *supra.*

The record shows that petitioners participated in the builders' tours because they provided an opportunity for James to meet

new people who might be interested in the services he, and First Federal, had to offer and to maintain good personal relations with people already using those services. While James discussed business continually during the tours, his wife testified that this was typical of his behavior during all social activities. He engaged in general discussions about business conditions and the services he could provide to a builder but did not engage in business meetings or negotiations on the tours. James could not directly connect particular business transactions with specific discussions, which occurred during the trips.[7] In short, petitioners' purpose in taking the trips was to create or maintain goodwill for James and First Federal, his employer, in order to generate some future business. Although the evidence tends to indicate that the trips did, in fact, enhance goodwill and contribute to James' success in loan production and otherwise constituted ordinary and necessary business expenses deductible under section 162, we hold, nevertheless, that Congress intended, by means of the more stringent standard of the "directly related" test in section 274(a), to disallow deductions for this type of activity, which involves merely the promotion of goodwill in a social setting. See *St. Petersburg Bank & Trust Co. v. United States*, 362 F. Supp. 674, 680 (M.D. Fla. 1973), affd. in an unpublished order 503 F.2d 1402 (5th Cir. 1974).[8]

We also hold that the petitioners' trips do not qualify as entertainment "associated with" the active conduct of a trade or business. To be deductible, entertainment "associated with" the active conduct of a trade or business must directly precede or follow a substantial business discussion. In *St. Petersburg Bank & Trust Co. v. United States, supra,* a decision affirmed by the Fifth Circuit, the District Court concluded that the phrase "directly preceding or following" in section 274(a)(1)(A) should be read restrictively in cases in which entertainment expenditures are related to the taxpayer's trade or business only in that they promote goodwill.[9] In view of the legislative history, which

---

[7]Only one witness claimed to recall specifically the subject matter of a discussion during the tour, but his testimony is not sufficient to justify allowance of the claimed deduction. Compare *Berkley Machine Works & Foundry Co. v. Commissioner*, T.C. Memo. 1977–177, holding that entertainment expenditures were directly related to the active conduct of the taxpayer's trade or business where the record was "replete with examples of specific projects that were the subject of business discussions" and "guests brought plans and specifications for jobs to be discussed."

[8]See also *Leon v. Commissioner*, T.C. Memo. 1978–367.

[9]See also *Lennon v. Commissioner*, T.C. Memo. 1978–176.

reveals that the "associated with" test is an exception to the general rule intended to limit deductions for entertainment which has as its sole business purpose the promotion of goodwill,[10] we agree with the District Court's conclusion. Accordingly, we do not consider the costs of the vacation trips to be deductible under section 274(a)(1)(A) as entertainment directly preceded or followed by a substantial and bona fide business discussion merely because James had general discussions of a business nature intended to promote goodwill during the course of the trips. See *St. Petersburg Bank & Trust Co. v. United States, supra* at 681.

We conclude that section 274(a) bars a deduction for the costs of James' trips. Because of this conclusion, we do not consider whether those costs were substantiated in accordance with the requirements of section 274(d) or properly allocated between personal and business activities under section 274(c).

*Decision will be entered for the respondent.*

---

[10]Sec. 274, in the form proposed by the House, would have prevented any deduction for the cost of entertainment, amusement, or recreation activities, absent a showing that such expense was directly related to the active conduct of business. H. Rept. 1447, *supra*, 1962-3 C.B. at 424, 527. The Senate disapproved of the House bill to the extent that it allowed no deduction of expenses for entertainment, amusement, or recreation incurred for the creation or maintenance of business goodwill and instead provided that such expenses would be deductible so long as they were "associated with" the taxpayer's business. S. Rept. 1881, *supra*, 1962-3 C.B. at 732. Upon consideration by the Conference Committee, a compromise was reached in which the Senate's less stringent "associated with" test was retained in sec. 274(a), but only after an amendment qualified and limited that test to those expense items directly preceding or following a substantial business discussion. Conf. Rept. 2508, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 1129, 1143-1144. See also *St. Petersburg Bank & Trust Co. v. United States*, 362 F.Supp. 674, 681 (M.D. Fla. 1973), affd. in an unpublished order 503 F.2d 1402 (5th Cir. 1974).