T.C. Summary Opinion 2001-83

UNITED STATES TAX COURT

EVELYN J. GLENN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7906-99S.                    Filed June 12, 2001.

Evelyn J. Glenn, pro se.

Joanne B. Minsky, for respondent.

ARMEN, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.[1]  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.

---

[1] Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 1995
and 1996, the taxable years in issue, and all Rule references are
to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes for 1995 and 1996 in the amounts of $21,583 and $23,917, respectively. Respondent also determined that petitioner is liable for accuracy-related penalties under section 6662(a) for 1995 and 1996 in the amounts of $4,316 and $4,783, respectively.

The issues for decision are as follows:

1. Whether petitioner underreported gross income on her Schedules C for 1995 and 1996. We hold that she did for 1995 to the extent provided herein but that she did not for 1996.

2. Whether petitioner is entitled to net operating loss deductions in 1995 and 1996. We hold that she is not.

3. Whether petitioner is entitled to deductions for "rent" (automobile) in 1995 and 1996. We hold that she is not.

4. Whether petitioner is entitled to deductions for travel in 1995 and 1996 in excess of the amounts allowed by respondent. We hold that she is not.

5. Whether petitioner is entitled to deductions for "rent" (office in the home) in 1995 and 1996. We hold that she is not.

6. Whether petitioner is entitled to deductions for telephone expense in 1995 and 1996. We hold that she is to the extent provided herein.

7. Whether petitioner is liable for accuracy-related penalties for 1995 and 1996. We hold that she is.

Adjustments in the notice of deficiency relating to the self-employment tax, the related deduction under section 164(f), the deductible amount of petitioner's medical expenses, and the earned income credit are purely mechanical matters, the resolution of which is dependent on our disposition of the disputed issues.

Background

Some of the facts have been stipulated, and they are so found.

Petitioner resided in Ponte Vedra Beach, Florida, at the time that her petition was filed with the Court.

During the years in issue, petitioner was a self-employed marketing consultant. Petitioner offered advertising and marketing services to a clientele consisting principally, if not exclusively, of medical doctors.

During 1995, petitioner's principal client was Dr. Elliott Jacobs (Dr. Jacobs), a plastic surgeon in New York City. During 1996, Dr. Jacobs was petitioner's only client.

Petitioner publicized and promoted Dr. Jacobs' medical practice by, among other ways, placing periodic advertisements in the New York Post. Dr. Jacobs compensated petitioner for her services, and he reimbursed her for the cost of the

newspaper advertisements.  Petitioner received the following
amounts from Dr. Jacobs in 1995 and 1996:

|                    | 1995      | 1996      |
|--------------------|-----------|-----------|
| Services rendered  | $54,500   | $40,750   |
| Reimbursement      | 61,004    | 75,120    |
| Total received     | 115,504   | 115,870   |

In 1995, petitioner had a second client, Dr. Socha, an
ophthalmologist, who also practiced in New York.  Dr. Socha
paid petitioner $8,166 for her services in 1995.

During the years in issue, petitioner maintained her
personal residence in Ponte Vedra Beach, Florida, where she
lived alone.  Ponte Vedra Beach is located in the metropolitan
Jacksonville area, about 18 miles from downtown Jacksonville.

During the years in issue, petitioner also rented a 2-
bedroom condominium apartment at Deerwood, a gated, residential
golf course community located in DuVal County (Jacksonville),
about 8 miles from downtown Jacksonville.  At various times
during the years in issue, petitioner's adult daughter, adult
son (a practicing attorney), and elderly mother lived in
petitioner's condominium at Deerwood.

During the years in issue, petitioner leased an
automobile.  Petitioner did not have any other motor vehicle at
her disposal during those years.

Petitioner filed an income tax return, Form 1040, U.S.
Individual Income Tax Return, for 1995.  On her return,

petitioner reported total income in the amount of negative $19,611, consisting of a "prior year NOL" in the amount of $14,672 and a net loss from her marketing business in the amount of $4,939. Petitioner attached to her return a Schedule C, Profit or Loss From Business, reporting income and deducting expenses as follows:

| Income | | |
|---|---|---|
| Gross receipts | | $94,064 |
| Less: cost of goods sold | | -61,004 |
| Gross Profit | | 33,060 |
| | | |
| Expenses | | |
| Advertising | | $1,838 |
| Car expenses | | 4,682 |
| Insurance | | 765 |
| Legal & professional | | 1,525 |
| Office expense | | 2,647 |
| Rent or lease (vehicle) | | 4,011 |
| Rent (other business property) | | 7,200 |
| Repairs/Maintenance | | 1,821 |
| Travel | | 3,271 |
| Meals/entertainment | $2,162 | |
| Less: 50% | -1,081 | 1,081 |
| Utilities | | 2,690 |
| Other | | |
| Dues & memberships | $830 | |
| Telephone | 4,848 | |
| Bank charges | 790 | 6,468 |
| Total expenses | | 37,999 |
| | | |
| Net loss | | 4,939 |

On her 1995 Schedule C, petitioner made no entry on line 30 for "Expenses for business use of your home", nor did petitioner attach Form 8829, Expenses for Business Use of Your Home, to her 1995 return.

On part IV of her 1995 Schedule C, petitioner claimed that she drove her automobile 9,000 miles for business and 3,000 for "other", for a total of 12,000 miles for the year.

Petitioner also filed an income tax return, Form 1040, for 1996. On her return, petitioner reported total income in the amount of negative $11,266, consisting of a "prior year NOL" in the amount of $19,611 and net profit from her marketing business in the amount of $8,345. Petitioner attached to her return a Schedule C, reporting income and deducting expenses as follows:

| | | |
|---|---|---|
| Income | | |
| Gross receipts | | $102,513 |
| Less: cost of goods sold | | -58,350 |
| Gross Profit | | 44,163 |
| | | |
| Expenses | | |
| Advertising | | 3,134 |
| Car expenses | | 5,301 |
| Legal & professional | | 2,674 |
| Office expense | | 4,934 |
| Pension & profit-sharing plans | | 8 |
| Rent or lease (vehicle) | | 3,968 |
| Rent (other business property) | | 4,800 |
| Travel | | 2,667 |
| Utilities | | 1,712 |
| Other | | |
| Dues & memberships | $135 | |
| Telephone | 5,300 | |
| Bank charges | 584 | |
| License | 66 | |
| Continuing education | 535 | 6,620 |
| Total expenses | | 35,818 |
| | | |
| Net profit | | 8,345 |

On her 1996 Schedule C, petitioner made no entry on line 30 for "Expenses for business use of your home", nor did petitioner attach Form 8829, Expenses for Business Use of Your Home, to her 1996 return.

On part IV of her 1996 Schedule C, petitioner claimed (as she had on part IV of her 1995 Schedule C) that she drove her automobile 9,000 miles for business and 3,000 for "other", for a total of 12,000 miles for the year.

Respondent commenced an examination of petitioner's 1995 income tax return no later than June 1997. Respondent commenced an examination of petitioner's 1996 income tax return on July 28, 1998.

In the notice of deficiency, respondent determined that petitioner underreported gross income on her Schedules C for 1995 and 1996. Respondent also disallowed for lack of substantiation: (1) The NOL deductions claimed by petitioner for 1995 and 1996; and (2) the following Schedule C deductions claimed by petitioner for those years:

|  | 1995 | | 1996 | |
| --- | --- | --- | --- | --- |
|  | Allowed | Disallowed | Allowed | Disallowed |
| Rent (auto) | --- | $4,011 | --- | $3,968 |
| Rent (home office) | --- | 7,200 | --- | 4,800 |
| Travel | $506 | 2,765 | $506 | 2,161 |
| Telephone | --- | 4,848 | --- | 5,300 |

Finally, for each of the years in issue, respondent determined that petitioner is liable for the accuracy-related

penalty under section 6662(a) for negligence or intentional disregard of rules or regulations.

Discussion

As a general rule, the burden of proof in a deficiency action is on the taxpayer. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933). Effective for court proceedings arising in connection with examinations commencing after July 22, 1998, section 7491(a)(1) serves to shift the burden of proof to the Commissioner when the taxpayer introduces credible evidence with respect to a factual issue relevant to ascertaining the liability of the taxpayer. However, section 7491(a)(2) places limitations on this burden-shifting rule. Thus, section 7491(a)(1) applies with respect to an issue only if (inter alia) the taxpayer has complied with all statutory and regulatory requirements to substantiate any item and the taxpayer has maintained all records required under the Internal Revenue Code. See sec. 7491(a)(2)(A) and (B).

We have previously found as a fact that respondent commenced the examination of petitioner's 1995 income tax return no later than June 1997. Accordingly, the burden-shifting rule of section 7491(a)(1) has no application to that year. In contrast, we have found as a fact that respondent commenced the examination of petitioner's 1996 income tax

return on July 28, 1998, after the effective date of section 7491. Therefore, the burden-shifting rule of section 7491(a)(1) may apply to that year. However, as will be discussed below, the limitations on the burden-shifting rule that are set forth in section 7491(a)(2)(A) and (B) serve to preclude the applicability of that rule to the factual issues in this case involving the NOL and Schedule C deductions.[2]

A.  Schedule C Gross Income

The record demonstrates that petitioner received unreported gross income in 1995 in the amount of $29,606, determined as follows:

```
Gross receipts
  Dr. Jacobs
    Services rendered    $54,500
    Reimbursement         61,004        $115,504
  Dr. Socha                                8,166
Total gross receipts                     123,670
Less: cost of goods sold                 -61,004
Gross profit/gross income                 62,666
Less: reported gross profit/gross income -33,060
Unreported gross profit/gross income      29,606
```

In contrast, the record demonstrates that petitioner did not receive unreported gross income in 1996, but rather overreported her gross income for that year, determined as follows:

---

[2]  We decide the issue involving Schedule C gross income without regard to the burden of proof.

```
Gross receipts: Dr. Jacobs
   Services rendered                        $40,750
   Reimbursement                             75,120
Total gross receipts                        115,870
Less: cost of goods sold                    -75,120
Gross profit/gross income                    40,750
Less: reported gross profit/gross income    -44,163
Overreported gross profit/gross income       (3,413)
```

In view of the foregoing, we sustain respondent's income determination for 1995 in that we hold that petitioner received unreported gross income for that year in the amount of $29,606. However, we do not sustain respondent's income determination for 1996; rather, we hold that petitioner overreported gross income for that year in the amount of $3,413.

B.  Net Operating Loss Deductions

Section 172 allows a deduction for a net operating loss (NOL) for the taxable year in an amount equal to the NOL carried back to the taxable year and the NOL carried forward to the taxable year.  See sec. 172(a).  An NOL is defined as the excess of deductions over gross income for a particular taxable year, with certain modifications.  See sec. 172(c) and (d).  As claimant of an NOL deduction, petitioner must prove her right thereto.  See United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955).

On her 1995 return, petitioner claimed a deduction for a "prior year NOL", relating to an alleged NOL for 1994.  On her 1996 return, petitioner again claimed a deduction for a "prior

year NOL", relating to alleged NOL's for 1994 and 1995.[3]

At trial, petitioner did not introduce one iota of evidence that she incurred a net operating loss in 1994. This failure alone is sufficient to bar any deduction under section 172 for either of the years in issue. See Myers v. Commissioner, T.C. Memo. 1995-329, affd. without published opinion 99 F.3d 1135 (5th Cir. 1996); see also Halle v. Commissioner, 7 T.C. 245 (1946) (a taxpayer's return is not self-proving as to the truth of its contents), affd. 175 F.2d 500 (2d Cir. 1949); Caruso v. Commissioner, T.C. Memo. 1966-190 (same). Assuming arguendo that petitioner incurred a net operating loss in 1994, petitioner failed to demonstrate that the NOL was not fully absorbed in a year(s) to which she was required to carry it back or that petitioner properly elected to relinquish the entire carryback period and instead carry the loss forward. See sec. 172(b)(1)(A), (b)(3); Gerstenberger v. Commissioner, T.C. Memo. 2001-50 n.7.

In view of the foregoing, we sustain respondent's determination and hold that petitioner is not entitled to any NOL deduction in either 1995 or 1996.

---

[3] It should be recalled that petitioner reported a net loss on her 1995 return. However, our disposition of the disputed issues for 1995 eliminates any loss for that year. Accordingly, we need only decide whether petitioner incurred an NOL in 1994, and, if so, whether such loss may be carried forward to 1995 and/or 1996.

C.  Deductions for Rent (Auto) and Travel

During the years in issue, petitioner operated only one automobile, which she leased.  On her Schedules C for 1995 and 1996, petitioner claimed deductions for rent (auto) in the amounts of $4,011 and $3,968, respectively.  Petitioner also claimed deductions for "car expenses" in the amounts of $4,682 and $5,301, respectively.  In the notice of deficiency, respondent disallowed the deductions claimed for rent (auto) but, inexplicably, did not adjust the deductions claimed for "car expenses".

Petitioner apparently determined the deductions for rent (auto) by allocating the cost of the lease between business and nonbusiness use of the automobile based on mileage.  In this regard, petitioner claimed on both of her 1995 and 1996 Schedules C that she drove the vehicle a total of 12,000 miles, of which 9,000 miles were for business and the remaining 3,000 miles were for "other".

At trial, petitioner introduced no mileage logs or other documentary evidence regarding the use of her automobile. Petitioner admitted that the vehicle was used for personal purposes, including commuting.  Regarding the allocation based on mileage, petitioner testified:

> My accountant did it. * * * I'm not too familiar
> with that part of the deduction.

Petitioner also deducted on her 1995 and 1996 Schedules C travel expenses in the amounts of $3,271 and $2,667, respectively.  In the notice of deficiency, respondent disallowed $2,765 and $2,161 for 1995 and 1996, respectively.

At trial, petitioner introduced no documentary evidence regarding travel expense.

By virtue of the strict substantiation requirements of section 274(d), no deduction may be allowed either for travel or with respect to any "listed property" on the basis of any approximation or the unsupported testimony of the taxpayer. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); Golden v. Commissioner, T.C. Memo. 1993-602; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985); see also sec. 280(F)(d)(4)(A)(i) defining listed property to include a passenger automobile.  Rather, the taxpayer must substantiate the deduction by adequate records, or by sufficient evidence corroborating the taxpayer's own statement, showing: (1) The amount of each expense or other item; (2) the time and place of the travel or use of the property; and (3) the business purpose of the expense or other item.  See sec. 274(d).  See sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985), regarding the requisite elements of each expenditure for travel that must be substantiated; sec. 1.274-

5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985), regarding the requisite elements to be substantiated with respect to any listed property; sec. 1.274-5T(c), Temporary Income Tax Regs., regarding the specific rules of substantiation.

In view of the foregoing, we sustain respondent's determination and hold that petitioner is not entitled to any deduction for rent (auto), or for travel in excess of the amount allowed by respondent, in either 1995 or 1996.

D.  Deduction for Rent (Office in the Home)

As a general rule, no deduction is allowable with respect to the use of a dwelling unit that is used by the taxpayer during the taxable year as a residence.  See sec. 280A(a). Pursuant to section 280A(d)(2)(A), the taxpayer shall be deemed to have used a dwelling unit for personal purposes if the unit is used for personal purposes by the taxpayer or by any member of the taxpayer's family, specifically including the taxpayer's children and parents.  See sec. 267(c)(4).  Exceptions to the general rule of disallowance exist to the extent that a portion of the dwelling unit is exclusively used on a regular basis as either (1) the principal place of business for the taxpayer's trade or business or (2) a place of business that is used by clients or customers in meeting or dealing with the taxpayer in the normal course of the taxpayer's trade or business.  See

sec. 280A(c)(1).

On her Schedules C for 1995 and 1996, petitioner claimed deductions for "office expense" in the amounts of $2,647 and $4,934, respectively, for "utilities" in the amounts of $2,690 and $1,712, respectively, and for "rent (other business property)" in the amounts of $7,200 and $4,800, respectively. In the notice of deficiency, respondent disallowed the deductions claimed for "rent (other business property)", but, inexplicably, did not adjust the other deductions.

The deductions claimed by petitioner for "rent (other business property)" represent deductions for an office in the home.[4]  Notably, petitioner made no entry on line 30 of either her 1995 or 1996 Schedule C for "Expenses for business use of your home", nor did she attach Form 8829, Expenses for Business Use of Your Home, to either of her returns for those years.

At trial, petitioner testified that she rented the Deerwood condominium in order to be closer to downtown Jacksonville, where the printing company she patronized was located.  However, we are unable to accept petitioner's testimony at face value.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Diaz v. Commissioner, 58 T.C. 560, 564 (1972);

---

[4]  As we understand petitioner's testimony, the deduction in 1995 represents 50 percent of the rent paid for the Deerwood condominium, whereas the deduction in 1996 relates to petitioner's residence in Ponte Vedra Beach.

Kropp v. Commissioner, T.C. Memo. 2000-148.  Deerwood is only about 10 miles closer to downtown Jacksonville than is Ponte Vedra Beach, which is within the metropolitan Jacksonville area, and petitioner did not convincingly establish that she patronized the printing company on such a frequent basis or that her time was so valuable as to justify paying considerable rent on a condominium only marginally closer to downtown than her personal residence.

More compelling is the fact that Deerwood is a gated, residential golf course community and not a business office park.  Petitioner's adult daughter, adult son (a practicing attorney), and elderly mother all lived in petitioner's condominium at Deerwood at various times during the years in issue.  Under these circumstances, we think it was incumbent on petitioner to demonstrate that some portion of the Deerwood condominium was exclusively used on a regular basis as either her principal place of business or as a place of business used by clients in meeting or dealing with her in the normal course of her trade or business.  See sec. 280A(c)(1)(A) and (B); Hefti v. Commissioner, T.C. Memo. 1993-128.  However, petitioner failed to do so.

Insofar as the residence in Ponte Vedra Beach is concerned, petitioner introduced no persuasive evidence whatsoever to support a finding that some portion of that

residence was exclusively used on a regular basis as either her principal place of business or as a place of business.  See sec. 280A(c)(1)(A) and (B); Hefti v. Commissioner, supra.

In view of the foregoing, we sustain respondent's determination, see sec. 280A(a), (d)(2), and hold that petitioner is not entitled to any deduction for rent (office in the home) for either of the years in issue.

E.  Deduction for Telephone Expense

Personal, living, and family expenses are not generally deductible.  See sec. 262(a).  Section 262(b) specifically provides that the cost of basic local telephone service provided to the first telephone line at the taxpayer's residence is a nondeductible expense.  Additionally, in order to be deductible, telephone expense must be incurred for business, rather than for personal, reasons.  See sec. 162(a); Walliser v. Commissioner, 72 T.C. 433, 437 (1979).

Petitioner deducted telephone expenses in 1995 and 1996 in the amounts of $4,848 and $5,300, respectively.  Respondent disallowed these amounts for lack of substantiation.

At trial, petitioner did not introduce any documentary evidence, such as telephone logs or monthly service statements, that would substantiate the deductions in issue.  However, we are satisfied that petitioner did, in fact, incur deductible telephone expenses during the years in issue.  Accordingly,

using our best judgment, but bearing heavily against petitioner whose inexactitude is of her own making, we hold that petitioner is entitled to deduct telephone expense in the amount of $1,000 for each of the years in issue. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).

F. Accuracy-Related Penalties

Finally, we turn to respondent's determination that petitioner is liable for accuracy-related penalties under section 6662(a).

Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment of tax resulting from, inter alia, negligence or disregard of rules or regulations. See sec. 6662(b)(1). For purposes of section 6662(a), the term "negligence" includes any failure to make a reasonable attempt to comply with the Code, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Negligence has also been defined as a lack of due care or failure to do what a reasonable person would do under the circumstances. See Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith. See sec. 6664(c)(1). The

determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.

As a general rule, the taxpayer bears the burden of proving that the taxpayer is not liable for the accuracy-related penalty.  See Compaq Computer Corp. v. Commissioner, 113 T.C. 214, 226 (1999).  Effective for court proceedings arising in connection with examinations commencing after July 22, 1998, section 7491(c) provides that the Commissioner shall have the burden of production with respect to the liability of any individual for any penalty.  However, the Commissioner's burden does not extend to whether the taxpayer acted with reasonable cause and in good faith; rather, it is the taxpayer's responsibility to raise that defense.  See H. Conf. Rept. 105-599, 1998-3 C.B. 747, 995, 996.

As previously discussed, section 7491 has no application to the taxable year 1995, but it does apply to the taxable year 1996.

We turn now to the merits of the issue.

Negligence often takes the form of an understatement of income or an overstatement of deductions.  See Healey v. Commissioner, T.C. Memo. 1996-260, and cases cited therein. Understatement of income or overstatement of deductions may reflect the inadequacy of the taxpayer's records, which is, of

itself, a basis for sustaining the accuracy-related penalty. In this regard, we observe that a taxpayer is required to maintain records sufficient to establish all items of income, deduction, and credit that are required to be shown on the taxpayer's tax return. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.; see also Lysek v. Commissioner, 583 F.2d 1088, 1094 (9th Cir. 1978), affg. T.C. Memo. 1975-293; Crocker v. Commissioner, 92 T.C. 899, 916 (1989); Schroeder v. Commissioner, 40 T.C. 30, 34 (1963); sec. 1.6662-3(b)(1), Income Tax Regs. Additionally, failure to keep adequate records is evidence of intentional disregard of the regulations. See Crocker v. Commissioner, supra at 917.

In the present case, petitioner failed to report over $29,000 of gross income from her proprietorship in 1995. Moreover, for both 1995 and 1996, petitioner claimed NOL deductions and various Schedule C deductions for which she did not maintain substantiation required by law.

Based on the foregoing, and insofar as 1996 is concerned, respondent has satisfied his burden of production under section 7491(c). Insofar as 1995 and 1996 are concerned, petitioner has failed to establish that she acted reasonably with respect to the underpayment of her taxes for those years. We therefore sustain respondent's determination and hold that petitioner is liable for the accuracy-related penalties for 1995 and 1996.

<u>Conclusion</u>

We have carefully considered the remaining arguments of both parties for results contrary to those expressed herein, and, to the extent not discussed above, we find those arguments to be irrelevant, moot, or without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues,

<u>Decision will be entered</u>

<u>under Rule 155.</u>