**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-49

UNITED STATES TAX COURT

CHRISTOPHER STANBACK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2139-13S.                     Filed May 29, 2014.

Christopher Stanback, pro se.

<u>Christopher J. Richmond</u>, for respondent.

SUMMARY OPINION

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was filed.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any

other court, and this opinion shall not be treated as precedent for any other case.

Unless otherwise indicated, subsequent section references are to the Internal

Revenue Code in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent issued a statutory notice of deficiency to petitioner determining deficiencies in income tax of $2,718 for 2010 and $1,521 for 2011.

The issues for decision are whether petitioner is entitled to deduct expenses claimed on Schedule C, Profit or Loss From Business, for utilities and travel in excess of those respondent allowed for 2010 and itemized deductions in excess of the standard deduction for 2011.[1]

Some of the facts have been stipulated and are so found. The stipulation of facts, the second stipulation of facts, the third stipulation of facts, and the exhibits received in evidence are incorporated herein by reference. Petitioner resided in California when the petition was filed.

Background

Since 2007 petitioner has worked as a production assistant in the film, television, and commercial industry. A production assistant is a person in any nonunion position assisting in the production of television shows, commercials, or films, such as a "runner" or, for example, a person making copies or filing. "On-

_____

[1]The adjustment to petitioner's itemized deductions for 2010 is computational and will be resolved by the decision of the Court on the other issues.

set" production assistants might be responsible for getting lunches for actors and performing other miscellaneous tasks. If a person is nonunion, he is always a "local hire" and receives no payment for travel expenses.

Petitioner is a member of Hawaii Local 665, the International Alliance of Theatrical Stage Employees (local 665). He is also a member of the International Cinematographers Guild Local 600 (local 600). Petitioner moved in 2008 from Hawaii, where the work is sporadic, to New York, where he was still residing in 2010. Local 600, the cinematographer's guild, is "international" but is divided into three districts: western, central, and eastern. Petitioner had accumulated days in the western district, but when he moved to New York, he transferred his local 600 membership there. He was unable to get union work, however, and ended up doing nonunion work.

Union jobs require a certain amount of experience and are usually paid by the day and sometimes hourly. Some crafts are paid by contract; production coordinators are paid a flat rate. Petitioner worked with a company making commercials in Hawaii, and he flew there from New York. Since petitioner was a member of the local 665 in Hawaii, they made him a local hire and did not pay his travel expenses. Typically only "distant-hire" department heads are compensated for travel: head of makeup, head of hair, production designers, all producers,

camera "DP" (director of photography), and his first assistant. The union jobs in Hawaii did pay union scale. Petitioner turned down jobs in Hawaii where he could not at least break even, considering the cost of travel, but he was always mindful of making contacts for potential future jobs. It is "who you know."

At the end of 2009, while petitioner was living in New York, he was offered work on a movie in Hawaii. He went back to Hawaii and worked a union job as a production coordinator. He then moved into a job as an art department coordinator. He also worked on two commercials. In 2010 petitioner returned to New York.

Petitioner was then asked to come back to Hawaii to work on the pilot episode of a television show. The show was selected for production, and petitioner was offered a job as prop master's assistant. Petitioner moved to Hawaii in July 2010. Petitioner was unable to break his apartment lease in New York, and he kept his Internet service there, "in case I needed it". Because his ground floor apartment had windows abutting an alley, petitioner feared leaving his personal items there and instead put them in storage. He left the television show in Hawaii in November 2010.

From December 2010 to January 2011 petitioner went to Prague, Czech Republic, to "teach and learn" at a film school under an exchange program

affiliated with local 600. Petitioner was provided with room and board, but he had to pay his own travel expenses. He was in Prague about three weeks.

In March or April 2011 petitioner moved to California and attempted to join Affiliated Property Craftspersons local 44. That union, however, was closed to new membership, so petitioner had to take nonunion jobs. He went back to New York for a few jobs and continued to pay for his New York storage unit through November 2011. In November 2011 petitioner's apartment lease was expiring. Petitioner traveled to New York to cancel his Internet service and to retrieve his belongings from storage. Petitioner "went back and forth in the snow donating" his storage items and throwing away other items. He then packed his remaining items, including his tax information, in a large Craftsman trunk and flew back to Los Angeles. Somewhere along the way petitioner's trunk was damaged by the airline or airport workers, and the contents were mostly lost or destroyed.

Petitioner filed his Federal income tax return for 2010, attaching a Schedule C claiming deductions for travel expenses of $6,306 and utilities expenses of $3,230. Petitioner's tax return for 2011 reported itemized deductions including medical expenses of $10,006 before the reduction required by section 213(a), charitable contributions of $10,400, and miscellaneous itemized deductions of $16,265 before the application of the 2% floor required by section 67.

## Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that those determinations are erroneous.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a).  The Court finds that petitioner has not argued or shown that he has met the requirements of section 7491(a), and the burden of proof does not shift to respondent.

Deductions are strictly a matter of legislative grace, and a taxpayer bears the burden of proving entitlement to any deduction claimed.  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934); Welch v. Helvering, 290 U.S. 111.  Moreover, taxpayers are required to maintain records that are sufficient to substantiate their deductions.  Sec. 6001.

Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.[2]  Generally, no deduction is allowed for personal, living, or family expenses, except where specifically authorized by statute.  See sec. 262.  The

---

[2]An employee's performance of services is a trade or business.  E.g., Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970).

taxpayer must show that any expenses for which business expenses are claimed were incurred primarily for business rather than personal, living, or family reasons.  See Rule 142(a); See Walliser v. Commissioner, 72 T.C. 433, 437 (1979).  To show that the expense was not incurred for personal reasons, the taxpayer must show that the expense was incurred primarily to benefit his business, and there must have been a proximate relationship between the claimed expense and the business.  See Walliser v. Commissioner, 72 T.C. at 437.

 Schedule C Expenses

Where a taxpayer has established that he has incurred a trade or business expense, failure to prove the exact amount of the otherwise deductible item may not always be fatal.  Generally, unless prevented by section 274, the Court may estimate the amount of such an expense and allow the deduction to that extent. See Finley v. Commissioner, 255 F.2d 128, 133 (10th Cir. 1958), aff'g 27 T.C. 413 (1956); Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  In order for the Court to estimate the amount of an expense, however, there must be some basis upon which an estimate may be made.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  Without such a basis, an allowance would amount to unguided largesse.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Petitioner presented copies of electric bills from his New York apartment for 2010 totaling $56.88 as evidence of his utilities expense deduction of $3,230. Petitioner explained that the expenses for utilities were business expenses because he had to maintain his apartment in New York while living in Hawaii. Petitioner had to maintain his apartment, he testified, because he had "unfinished business" in New York, and he needed the Internet service and electricity to run it. Also, he could not afford to break his lease.

The Court finds that petitioner has not substantiated his utilities expenses and has not shown that they were business as opposed to personal expenses. Respondent's determination on this issue is sustained.

Certain business deductions described in section 274 are subject to strict rules of substantiation that supersede the doctrine in Cohan v. Commissioner, 39 F.2d at 543-544. See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Section 274(d) provides that no deduction shall be allowed with respect to certain items, including: (a) any traveling expense, including meals and lodging away from home; (b) any item related to an activity of a type considered to be entertainment, amusement, or recreation; or (c) the use of any "listed property", as defined in section 280F(d)(4), unless the taxpayer substantiates certain elements.

For an expense described in one of the above categories, the taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony: (1) the amount of the expenditure or use, applying the appropriate measure (mileage may be used in the case of automobiles); (2) the time and place of the expenditure or use; (3) the business purpose of the expenditure or use; and in the case of entertainment, (4) the business relationship to the taxpayer of each expenditure or use. See sec. 274(d).

To meet the adequate records requirements of section 274, a taxpayer must maintain some form of records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use. See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., supra. A contemporaneous log is not required, but corroborative evidence to support a taxpayer's reconstruction of the elements of the expenditure or use must have "a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

Petitioner prepared for trial, as evidence of his travel expenses for 2010, a document titled "Work Related Travel Expenses", a summary list of locations with the categories "REASON/JOB", arrival and departure dates, and round number

estimated costs that included airfare and hotel costs. Petitioner testified that he could not obtain any of his pertinent records because small banks and credit card companies get sold to bigger companies and "they dissolve the assets and keep the records God knows where".

Petitioners' documentation for travel expenses[3] does not meet the standard of substantiation required by section 274. The Court sustains respondent's determination on this issue.

Itemized Deductions

Because petitioner's allowable itemized deductions, after respondent's adjustments, were less than the standard deduction, respondent allowed petitioner the standard deduction of $5,800.

Medical and Dental Expenses

Petitioner deducted $10,006 of medical and dental expenses before application of the statutory floor of 7.5% of adjusted gross income. See sec. 213(a). Respondent allowed petitioner a $3,080 deduction for medical expenses. Petitioner testified that his union medical plan would pay for medical treatment

---

[3]Petitioner's summary of travel expenses lists $3,600 for travel in 2011, although he did not claim a deduction for travel expenses on Schedule C for 2011. Respondent did not adjust petitioner's deduction from gross income for that year of $10,900 of moving expenses, which included travel expenses of $7,500.

only in Hawaii, otherwise he was required to pay out of pocket. Petitioner further testified that he cannot get copies of his medical bills because the hospital in Hawaii will mail medical records only to the street address he gave when he received care from the hospital. He testified that he has only a post office box in New York; he would have to go to Hawaii in person to get copies of his records, because the hospital will not mail them to him. In any event, petitioner cannot show that he actually paid any bills he might have received from any source in excess of the amounts respondent allowed.

Petitioner has not shown that he is entitled to medical and dental expense deductions in excess of those respondent allowed.

Charitable Contributions

Also included in his itemized deductions were charitable contributions in kind of $400 and carryover contributions of $10,000. Petitioner's only documentary evidence for these contributions was copies of four Goodwill receipts that show the dates of donation but do not show the name of the donor or the description or valuation of the items donated. Respondent allowed a deduction for the $400 of noncash contributions. Petitioner reported that the carryover contributions are from 2008, 2009, and 2010. Petitioner reported only $270 of charitable contributions for 2010. Petitioner offered no evidence of the

"carryover" contributions except for his testimony that his mother advised him by telephone in late 2011 of her donations of his items, evidence of which was lost when his trunk was damaged.

Section 170(d)(1)(A) allows the carryover of deductions for contributions to section 170(b)(1)(A) organizations that exceed 50% of the taxpayer's "contribution base" for the taxable year. The taxpayer's contribution base is his adjusted gross income computed without the deduction allowed by section 172. Sec. 170(b)(1)(G). Petitioner has not shown that he is entitled to a charitable contribution deduction for 2011 in excess of the $400 respondent allowed. And he clearly cannot meet the requirements of section 170(d)(1)(A) with respect to carryover contributions from 2008, 2009, and 2010.

Unreimbursed Employee Business Expenses

Petitioner deducted $16,265 of unreimbursed employee business expenses, of which respondent allowed $1,766 for 2011. Included in the employee business expense deductions were travel expenses of $3,200, parking fees, tolls, and transportation expenses of $327, vehicle expenses of $8,245, meals and entertainment expenses of $550, and other business expenses of $3,572. As evidence of his employee business expenses petitioner provided copies of credit card statements and some bank statements for 2011 that, without further

explanation, appear overwhelmingly to show personal expenditures. Petitioner

offered no evidence of his $100 deduction for tax preparation fees[4] and $546 for

attorney's and accountant's fees.

Respondent's determination that the standard deduction exceeds the sum of

petitioner's substantiated itemized deductions for 2011 is sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[4]Petitioner's tax return indicates it was "Self-Prepared".