T.C. Memo. 2014-135

UNITED STATES TAX COURT

MICHAEL HUME AND DORSAYE DILANI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27294-11.                    Filed July 7, 2014.

Ps claimed mortgage interest deductions on their 2008 and
2009 Schedules C, Profit or Loss From Business, for a property they
owned and had intended to rent out.  R determined that Ps were not
entitled to Schedule C deductions, but rather the property was a
personal residence and Ps are able to deduct the mortgage interest
payments only as qualified residence interest deductions on their
Schedules A, Itemized Deductions, subject to the $1.1 million I.R.C.
sec. 163(h) limitation.

Held:  The mortgage interest P-H paid in 2008 and 2009 on Ps'
personal residence is not an ordinary business expense, but rather is
deductible as an itemized interest deduction on each Schedule A and
is subject to the qualified residence limitation of I.R.C. sec. 163(h).

Held, further, P-H's property at 420 Cazador Lane is a personal
residence.

**[*2]** Held, further, for each year in issue, P-H is able to deduct the interest paid with respect to an amount allocable to the $1.1 million of acquisition and home equity indebtedness, but R properly disallowed a deduction for the remaining mortgage interest paid.

Michael Hume and Dorsaye Dilani, pro sese.

Sebastian Voth, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


WHERRY, Judge:  This case is before the Court on a petition for redetermination of deficiencies in income tax respondent determined for petitioners' 2008 and 2009 tax years.  Petitioners timely filed joint Federal income tax returns for the 2008 and 2009 tax years.  Respondent issued a notice of deficiency on August 29, 2011, disallowing business expense deductions for petitioners' mortgage interest payments and allowing the mortgage interest payments as qualified residence interest deductions on Schedules A, Itemized Deductions, subject to the section 163(h)(3) limitation.[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the taxable years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** After concessions by the parties,[2] the issues for decision are: (1) whether petitioners had a trade or business in 2008 or 2009 under section 162, which would permit Mr. Hume to deduct the mortgage interest paid in relation to a house at 420 Cazador Lane as an ordinary business expense; (2) if petitioners' activities do not qualify as a trade or business, whether petitioners can deduct mortgage interest and home equity indebtedness interest paid on loans in excess of the aggregate combined $1,100,000 loan limitation of section 163(h).

---

[2]On December 17, 2012, and on March 13, 2013, the parties filed with the Court stipulations of settled issues stating the following:  (1) respondent concedes the adjustments for 2008 and 2009 for unreimbursed employee expenses of $20,318 and $11,354, respectively; (2) respondent concedes the accuracy-related penalties under sec. 6662(a) for 2008 and 2009; (3) all income, capital losses, itemized deductions, and the Schedules C, Profit or Loss From Business, included in petitioners' original Form 1040, U.S. Individual Income Tax Return, and Form 1040X, Amended U.S. Individual Income Tax Return, for petitioners' 2008 tax year are attributable to Mr. Hume; (4) Mr. Hume is entitled to two exemptions for two of petitioners' children for the 2008 and 2009 tax years; (5) all income, Schedule C deductions, itemized deductions, and capital losses, except the Schedule C income and deductions attributable to Ms. Dilani's business, reported on petitioners' Forms 1040 and 1040X for their 2009 tax year are attributable to Mr. Hume; (6) Mr. Hume and Ms. Dilani should have filed their 2008 and 2009 income tax returns with a filing status of single because their divorce was final before the end of 2008, see sec. 6013(g)(4)(C); and (7) respondent waives seeking an increased deficiency due to any potential change to petitioners' proper filing status for 2008 or 2009.

**[*4]**                                FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts and stipulation of settled issues and supplemental stipulation of settled issues with the facts contained in their accompanying exhibits are hereby incorporated by reference into our findings.

During the years at issue and when they filed their Tax Court petition on which this case is based, petitioners resided in separate homes in San Clemente, California.

Background

Mr. Hume worked full time in the sales division of Planet Antares Corp. (Planet Antares). Planet Antares helped entrepreneurs start their own home-based vending machine businesses. During 2008 and 2009 Mr. Hume traveled over 59 times to various parts of the United States and Canada in connection with his job. Each business trip took an average of one week.

Properties

In June of 2004 petitioners acquired a 4,437-square-foot single-family home at 24 Calle Pacifica (Calle Pacifica) in San Clemente, California. Calle Pacifica had 5 bedrooms and 4.5 baths. In 2004 petitioners and their three children were living in Calle Pacifica. Mr. Hume moved out of Calle Pacifica in early 2006.

[*5] Ms. Dilani and petitioners' children continued to live in Calle Pacifica through January 2012. Mr. Hume and Ms. Dilani were divorced on February 7, 2008.

In August of 2005 petitioners purchased a single-family home at 420 Cazador Lane (Cazador) in San Clemente, California. Petitioners purchased Cazador for $1,460,000, which was paid in part by a $1 million purchase money mortgage loan from Countrywide Home Loans. The house was originally built for Oscar nominee Ann Harding[3] in 1926. Petitioners' purchase of Cazador was documented by a quitclaim deed. Petitioners did not have Cazador inspected by engineers or other professionals before purchasing it. When petitioners purchased Cazador, tenants were living there and paying a monthly rent significantly below market. Petitioners ended the agreements with the tenants and caused the tenants to move out of Cazador by early 2006.

Petitioners purchased Cazador with the intent of renting it out for weekly vacations and for events.[4] At the time of purchase and at all times thereafter

---

[3]Ann Harding is best known for her role in the movie "Holiday".

[4]In August 2005 petitioners contracted with PHG Management Co. to rent and manage Cazador for them. Between September and November 2005 petitioners did receive rental income from Cazador; but after that the rental income ceased, and the agreement with PHG Management Co. appears to have terminated

(continued...)

**[*6]** petitioners did not have a preexisting arrangement to rent or sell Cazador to any specific parties. Petitioners acknowledged that they had purchased Cazador without fully realizing the amount of work or the repair cost that was needed to make Cazador suitable for potential renters. Cazador had many structural and aesthetic problems, and petitioners were never able to get the property into suitable shape for new tenants.

Petitioners on December 6, 2005, contracted with the City of San Clemente to preserve and maintain Cazador as a historic structure.[5] The City of San Clemente required that Cazador have certain structural changes and maintenance performed in exchange for a lower property tax assessment. The historic preservation agreement with the City of San Clemente did not include any information indicating the renting or intent to rent out Cazador. During 2008 and

---

[4](...continued)
although the record is unclear on this point.

[5]The California law commonly known as the Mills Act permits agreements with at least a 10-year term between cities and property owners for historic preservation and in exchange provides for certain property tax concessions to the property owners. Specifically, it permits property tax valuation using the income method described by Cal. Rev. & Tax. Code sec. 439.2 (West 1998 & Supp. 2014). See Cal. Gov't Code secs. 50280-50290 (West 2002); see also Cal. Rev. & Tax. Code sec. 439.

[*7] 2009 petitioners did not rent nor did they advertise Cazador.[6] Despite their problems in carrying out the alleged rental plan during 2008 and 2009 petitioners did not attempt to sell Cazador. During 2008 and 2009 Mr. Hume lived at Cazador when he was not traveling. Petitioners never completed the renovations before they sold the property on November 16, 2012.

Mortgage Interest and Equity Line

On January 25, 2005, petitioners refinanced Calle Pacifica by obtaining a mortgage loan for $995,000 from Washington Mutual Bank. On May 12, 2005, petitioners received a home equity line of credit of $436,250 from Countrywide Bank by using their equity in Calle Pacifica as collateral. Petitioners' mortgage loan refinance on Calle Pacifica had average loan balances of $1,064,000 and $1,056,000 during the tax years 2008 and 2009, respectively. On February 16, 2007, petitioners refinanced Cazador by obtaining a $2,100,000 mortgage loan from Washington Mutual Bank. Petitioners owned Cazador during both of the years at issue.

In 2008 petitioners paid home mortgage interest and points totaling $153,568. In 2009 petitioners paid home mortgage interest and points totaling

---

[6]In 2006, petitioners advertised Cazador in the San Clemente Times, but that was before they realized how much work needed to be done on the property.

[*8] $195,265.  In 2008 and 2009 the average mortgages secured by the two homes exceeded $3 million.  Petitioners also had a home equity line of credit that exceeded $400,000.

Tax Returns

On petitioners' 2008 Form 1040 they deducted home interest and points totaling $153,568 on their Schedule A for the two San Clemente properties. Petitioners also deducted $29,888 of interest arising from the equity line of credit associated with Calle Pacifica.  Petitioners filed Form 1040x for the 2008 tax year. On petitioners' amended return they moved the $102,807 mortgage interest deduction associated with Cazador from their Schedule A to their Schedule C.[7]

Petitioners filed a Form 1040 for their 2009 tax year and deducted $195,236 of claimed mortgage interest expense on their Schedule A for Cazador and Calle Pacifica.  Petitioners filed Form 1040x for the 2009 tax year that moved from their Schedule A to their Schedule C the claimed interest deduction associated with Cazador of $115,756.[8]  Respondent disallowed the mortgage interest and home

---

[7]Remaining on petitioners' Form 1040X Schedule A for 2008 was the mortgage interest associated with Calle Pacifica of $48,856 and points paid of $1,905.

[8]Remaining on petitioners' Form 1040X Schedule A for 2009 was the mortgage interest associated with Calle Pacifica of $73,404 and points paid of

(continued...)

**[*9]** equity interest deductions petitioners claimed for taxable years 2008 and 2009 to the extent that the interest related to loan principal which exceeded the aggregate $1.1 million cap applicable to the qualified residence interest deduction.

OPINION

I.    Burden of Proof

As a general rule, the Commissioner's determination in the notice of deficiency is presumed correct, and the taxpayer bears the burden of proving by a preponderance of the evidence that the determination is improper.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Although section 7491(a) may shift the burden of proof to the Commissioner in specified circumstances, petitioners have not established that they meet the requirements under section 7491(a)(2) for such a shift.  Consequently, the burden of proof remains on petitioners.

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any claimed deductions.  Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Taxpayers are required to identify each deduction, maintain adequate records, substantiate each deduction,

---

[8](...continued)
$1,905.

[*10] and show that they have met all requirements.[9] Sec. 6001; Roberts v. Commissioner, 62 T.C. 834, 836-837 (1974); sec. 1.6001-1(a), Income Tax Regs.

To prove a deductible expense, the taxpayer must establish with credible evidence not only the facts of the expenditure, but also the business purpose or other deductible character of the expense. "Business expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a) Income Tax Regs. A claimed business expense must be incurred primarily for business rather than personal reasons. Walliser v. Commissioner, 72 T.C. 433, 437(1979); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969). The required tax records must be retained as long as they may be material in the administration of any internal revenue law. Sec. 1.6001-1(e), Income Tax Regs. Further, there must be a proximate relationship between the claimed expense and the business. See Walliser v. Commissioner, 72 T.C. at 437.

II.     Real Estate Activity

In general, section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or

---

[9]Strict substantiation rules for deductions other than those subject to sec. 274(d) scrutiny may, in some situations not present here, be relaxed by the Cohan rule. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).

**[\*11]** business.  In order for an activity to be considered a taxpayer's trade or business for purposes of section 162, the activity must be conducted "with continuity and regularity" and "the taxpayer's primary purpose for engaging in the activity must be for income or profit".  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). Whether a taxpayer's activities constitute the carrying on of a trade or business requires an examination of the facts and circumstances of each case.  Id. at 36; Higgins v. Commissioner, 312 U.S. 212, 217 (1941); O'Donnell v. Commissioner, 62 T.C. 781 (1974), aff'd without published opinion, 519 F.2d 1406 (7th Cir. 1975).

Implicit in both section 162 and the regulations is that the taxpayer must be established in a trade or business before any expenses are deductible.  Link v. Commissioner, 90 T.C. 460, 463 (1988), aff'd without published opinion, 869 F.2d 1491 (6th Cir. 1989).  "A taxpayer is not carrying on a trade or business under section 162(a) until the business is functioning as a going concern and performing the activities for which it was organized."  Glotov v. Commissioner, T.C. Memo. 2007-147; see also McKelvey v. Commissioner, T.C. Memo. 2002-63, aff'd, 76 Fed. Appx. 806 (9th Cir.  2003).

The first question before the Court for decision is whether petitioners' 2008 and 2009 mortgage interest expenditures qualify as section 162 business expenses.

**[\*12]** It is respondent's position that even though Mr. Hume paid these expenses, they qualify, if at all, for the qualified residence interest deduction, as opposed to constituting ordinary and necessary section 162 business expenses. In determining whether these expenses are in fact section 162 business expenses, the threshold question is: Did petitioners start actively engaging in their proposed rental business by their taxable years 2008 and/or 2009?

Whether a taxpayer is engaged in a trade or business is determined using a facts and circumstances test under which courts have focused on the following three factors that indicate the existence of a trade or business: (1) the taxpayer undertook the activity intending to earn a profit; (2) the taxpayer is regularly and actively involved in the activity; and (3) the taxpayer's activity has actually commenced. See McManus v. Commissioner, T.C. Memo. 1987-457, aff'd without published opinion, 865 F.2d 255 (4th Cir. 1988). Mr. Hume testified, and nothing in the record seems to suggest otherwise, that he purchased Cazador with the purpose of renting out the property for profit. The record arguably reflects that he may have regularly and actively engaged in efforts to further and promote the activity although he also resided at Cazador when in Los Angeles. See generally sec. 262(a) (prohibiting the deduction of personal living or family expenses unless

**[\*13]** explicitly authorized). However, it is the third factor, whether petitioners' business had actually commenced, that is ultimately determinative here.

While not conclusive, it is important to note that Mr. Hume derived no income from and did not rent out Cazador in either of the two years at issue. Mr. Hume testified that petitioners never were able to get Cazador into a "condition to be able to" rent it. Additionally, Mr. Hume was living at Cazador during 2008 and 2009. Accordingly, his course of conduct was not consistent with that of a person who believed he was renting or able to rent out the property during 2008 or 2009. We conclude that during 2008 and 2009 petitioners had not yet restarted the prior owner's rental business that petitioners had abandoned in December 2005 and therefore petitioners are not entitled to a section 162 deduction for 2008 or 2009.

Consequently, the mortgage interest petitioners paid on the indebtedness secured by Cazador and Calle Pacifica is not a section 162 ordinary business expense, but rather is deductible, if at all, as qualified residence interest pursuant to section 163(a) that is subject to the limitations of section 163(h).

III. Qualified Residence Interest Deduction

As a general rule, taxpayers may not deduct personal interest. Sec. 163(h)(1). A limited exception to this general rule permits individuals to deduct

[*14] qualified residence interest. Sec. 163(h)(3). Section 163(h)(3)(A) defines

qualified residential interest as:

> any interest which is paid or accrued during the taxable year on
>
> (i) acquisition indebtedness with respect to any qualified residence of the taxpayer, or
>
> (ii) home equity indebtedness with respect to any qualified residence of the taxpayer.

Acquisition indebtedness is debt that is used to acquire, construct, or substantially

improve a "qualified residence" and that is secured by that residence. Sec.

163(h)(3)(B)(i). The aggregate amount treated as acquisition indebtedness for any

period cannot exceed $1 million ($500,000 for a married individual filing a

separate return). Sec. 163(h)(3)(B)(ii). Acquisition indebtedness includes debt

incurred in refinancing acquisition indebtedness, insofar as the new debt does not

exceed the refinanced debt. Sec. 163(h)(3)(B) (flush language). Home equity

indebtedness is the first $100,000 of debt ($50,000 for a married taxpayer filing

separately), other than acquisition indebtedness, secured by a "qualified residence"

so long as the debt does not exceed the fair market value of the residence reduced

by the qualified acquisition indebtedness. Sec. 163(h)(3)(C). As relevant here,

"qualified residence" means the taxpayer's "principal residence" within the

meaning of section 121. Sec. 163(h)(4)(A)(i)(I). Section 121 does not define the

[*15] term "principal residence" but, subject to various limitations, allows for the exclusion of gain on the sale or exchange of property "owned and used by the taxpayer as the taxpayer's principal residence".  Sec. 121(a).

For 2008 and 2009 Mr. Hume deducted mortgage interest on Calle Pacifica and Cazador on an aggregate loan amount of more than $3 million.  Respondent conceded that Mr. Hume paid the mortgage interest on both Calle Pacifica and Cazador.  Generally, Mr. Hume would be eligible to claim a section 163(a) and (h) deduction for the interest paid on $1.1 million of the loans;[10] however, Mr. Hume did not provide any evidence to show that he lived in Calle Pacifica for the required 14 days during either 2008 or 2009.  Sec. 163(h)(4)(A)(i)(II).  Accordingly, he may claim only the mortgage interest deduction with respect to Cazador.  Therefore, respondent properly disallowed the excess mortgage interest paid with respect to loan amounts above $1.1 million.  See sec. 163(h)(3)(B)(ii), (C)(ii).

---

[10]When Mr. Hume paid for the properties, he was divorced from Ms. Dilani; and as divorced persons filing separate returns they may have otherwise both been able to qualify for the full $1.1 million dollar deduction.  However, petitioners did not present any evidence to suggest that Ms. Dilani provided any of the mortgage payments.

**[\*16]** IV.　　Conclusion

On the record as a whole the Court accepts respondent's determination that petitioners were not during 2008 and 2009 engaged in the business of renting out Calle Pacifica or Cazador.  Additionally, petitioners are not entitled to claim interest deductions arising from their home loans to the extent the interest paid is attributable to loan amounts above the $1.1 million section 163(h) limitation.  As noted in the stipulation of settled issues, petitioners do not have an increased deficiency due to the statutory switching of their filing status for the 2008 and 2009 taxable years from married filing jointly to single.[11]  Additionally, as the joint Federal income tax returns petitioners filed for 2008 and 2009 were impermissible Ms. Dilani is not liable for the increased deficiency for the 2008 and 2009 tax years, except to the extent, if any, that the deficiency relates to her separate business income and deductions in 2009.  See sec. 6013; sec. 1.6015-3(a), Income Tax Regs.

                                        Decision will be entered under

                                        Rule 155.

---

[11]Petitioners' filing of their joint Federal income tax returns for 2008 and 2009 was not permitted and therefore they are treated as filing separately.  See sec. 6013(a); secs. 1.6013-(4)(a), 1.6013-6(b)(3), Income Tax Regs.